**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| ASSIYAH FATEEN, MICHAEL JOHNSTON and SHEILA SORVARI, *on behalf of themselves and all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>COREWELL HEALTH d/b/a BEAUMONT HEALTH,<br><br>Defendant. | Case No.: 24-cv-01216 |

**DEFENDANT COREWELL HEALTH D/B/A BEAUMONT HEALTH'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and for the reasons set forth in the accompanying memorandum of law, Defendant Corewell Health d/b/a Beaumont Health respectfully moves this Court for dismissal of Plaintiffs' First Amended Class Action Complaint (ECF No. 7) in its entirety, with prejudice.

Respectfully Submitted,

Dated: March 28, 2025

MCDONALD HOPKINS PLC

By: */s/Michael G. Latiff*
Michael G. Latiff
39533 Woodward Avenue, Suite 318
Bloomfield Hills, Michigan 48304
(248) 220-1351
mlatiff@mcdonaldhopkins.com

Jennifer W. Torrez (*Pro Hac Vice* forthcoming)

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| ASSIYAH FATEEN, MICHAEL JOHNSTON and SHEILA SORVARI, *on behalf of themselves and all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>COREWELL HEALTH d/b/a BEAUMONT HEALTH,<br><br>Defendant. | Case No.: 24-cv-01216 |

**DEFENDANT COREWELL HEALTH D/B/A BEAUMONT HEALTH'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

**Page**


I. INTRODUCTION .......... 1

II. ALLEGED FACTS AND CLAIMS .......... 2

III. LEGAL STANDARD .......... 4

IV. ARGUMENT .......... 5

A. Count 1 Fails to State a Claim for Violation of the ECPA .......... 5

B. Count II Fails to Plead the *Prima Facie* Elements of Breach of Fiduciary Duty .......... 8

C. Count III for Breach of Implied Contract Fails to Allege Mutual Assent, Consideration and Damages .......... 10

1. Plaintiffs failed to allege mutual assent .......... 11

2. Plaintiffs failed to allege consideration sufficient to support contract formation .......... 11

3. Plaintiffs fail to allege they suffered legally cognizable Damages .......... 13

D. Count IV for Negligence Fails for Lack of Duty and Damages .......... 14

1. Plaintiffs fail to allege the existence of any legally recognized duty .......... 14

2. Plaintiffs fail to plead cognizable damages .......... 16

E. Count V for Unjust Enrichment Fails for Lack of Benefit and Alleged Inequity .......... 16

F. Count VI Fails to Meet the Pleading Standard Required to State a

Claim Under the Michigan Consumer Protection Act .................................. 18

G. Count VII Fails to Plead a Violation of the Michigan Nonprofit Healthcare Corporation Reform Act .............................................................. 20

CONCLUSION ......................................................................................................... 21

# INDEX OF AUTHORITIES

**Page**

*Acara v. Banks*,
470 F.3d 569 (5th Cir. 2006) ....................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................4, 5, 20

*Baker v. Arbor Drugs, Inc.*,
215 Mich.App. 198 (1996)....................19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................20

*Boddie v. ABC, Inc.*,
881 F.2d 267 (6th Cir. 1989) ....................6

*In re Brinker Data Incident Litig.*,
No. 18-cv-686, 2020 WL 691848 (M.D. Fla., January 27, 2020) ....................15

*Burkhardt v. Bailey*,
260 Mich. App. (2004)....................11

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010)....................6, 7

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ....................8

*Coffey v. Foamex LP*,
2 F.3d 157 (6th Cir.1993) ....................18

*Delphi Auto. PLC v. Absmeier*,
167 F. Supp. 3d 868 (E.D. Mich. 2016)....................8

*Detroit v. Highland Park*,
326 Mich. 78 (1949) ....................10

*Doe v. Henry Ford Health Sys.*,
308 Mich. App. 592 (2014)....................16

*Emergency Dep't Physicians P.C. v. United Healthcare, Inc.*,
507 F. Supp. 3d 814 (E.D. Mich. 2020)....................11, 13

*Erickson v. Goodell Oil Co.*,
384 Mich. 207 (1970) ....................11

*In re Estate of Lewis*,
168 Mich. App. 70 (1988)....................10

*In re Facebook Internet Tracking Litig.*,
263 F. Supp. 3d 836 (N.D. Cal. 2017)....................5

*Fritz v. Charter Twp. of Comstock*,
592 F.3d 718 (6th Cir. 2010)....................5

*In re Gallagher Data Breach Litig.*,
631 F. Supp. 3d 573 (N.D. Ill. 2022)....................17

*Gen. Aviation, Inc. v. Cap. Region Airport Auth.*,
224 Mich. App. 710 (1997)....................12

*General Motors Corp. v. Dept. of Treasury, Revenue Div.*,
466 Mich. 231 (2002)....................11, 12

*In re Google Cookie Placement Consumer Priv. Litig*,
806 F.3d 125 (3rd Cir. 2015)....................7

*Hall v. Centerspace, LP*,
No. 22-cv-2028, 2023 WL 3435100 (D. Minn. May 12, 2023)....................17

*Henry v. Dow Chem. Co.*,
473 Mich. 63 (2005)....................9, 14, 16

*Highfield Beach at Lake Michigan v. Sanderson*,
331 Mich. App. 636 (2020)....................8

*Irwin v. Jimmy John's Franchise, LLC*,
175 F. Supp. 3d 1064 (C.D. Ill. 2016)....................18

*Kingsley Assocs., Inc. v. Moll PlastiCrafters, Inc.*,
65 F.3d 498 (6th Cir. 1995)....................11

*Kirch v. Embarq Mgmt. Co.*,
702 F.3d 1245 (10th Cir. 2021)....................8

*Kussy v. Home Depot U.S.A., Inc.*,
2006 WL 3447146 (E.D. Mich. 2006)....................18

*Landstar Express Am., Inc. v. Nexteer Auto. Corp.*,
319 Mich. App. 192 (2017)....................17

*Mallory v. City of Detroit*,
181 Mich. App. 121 (1989)....................10, 12

*Mayhall v. A.H. Pond Co., Inc.*,
129 Mich. App. 178 (1983)....................18

*In re McKim Estate*,
238 Mich. App. 453 (1999)....................10

*In Re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022)....................6

*Montgomery v. Kraft Foods Glob., Inc.*,
No. 1:12-cv-00149, 2012 WL 6084167 (W.D. Mich. Dec. 6, 2012) (aff'd, 822 F.3d 304 (6th Cir. 2016))....................15

*Morris Pumps v. Centerline Piping, Inc.*,
273 Mich. App. 187 (2006)....................16

*In re OnStar Cont. Litig.*,
278 F.R.D. 352 (E.D. Mich. 2011)....................18

*In re Packaged Ice*,
779 F. Supp. 2d (E.D. Mich. 2011)....................19

*Peavy v. WFAA-TV, Inc.*,
221 F.3d 158 (5th Cir. 2000)....................8

*Rakyta v. Munson Healthcare*,
No. 354831, 2021 WL 4808339 (Mich. App., Oct. 14, 2021)....................9, 16

*Randall v. Michigan High Sch. Athl. Ass'n.*,
334 Mich. App. 697 (2020)....................15

*Rodriguez v. Berrybrook Farms, Inc.*,
1990 U.S. Dist. LEXIS 7678 (W.D. Mich. 1990)....................20

*Ross v. Glasser*,
220 Mich. App 183 (1996)....................14

*Teeter v. Easterseals-Goodwill Northern Rocky Mountain, Inc.*,
No. CV-22-96-GF-BMM, 2023 WL 2330241 (D. Mont., March 2, 2023)....................15

*U.S. v. Blue Cross Blue Shield of Michigan*,
809 F.Supp.2d 665 (E.D. Mich. 2011)....................21

*Williams v. Cunningham Drug Stores, Inc*,
429 Mich. 495, 499 (1988)....................14

*Williams v. Scottrade, Inc.*,
No. 06-10677, 2006 WL 2077588 (E.D. Mich. 2006)....................19

*Zine v. Chrysler Corp.*,
236 Mich.App. 261 (1999)....................19

**Statutes**

18 U.S.C. § 2511(2)(d) ....................4, 5, 6

MCL 455.901....................4, 18

MCL 455.903....................7

MCL § 550.140....................4, 20

MCL § 550.1102(2) ....................21

MCL § 550.1107(4) ....................21

MCL § 550.1406(1) ....................21

**Rules**

Fed.R.Civ.P. 9....................18

Defendant, Corewell Health d/b/a Beaumont Health ("Corewell"), in support of its Rule 12(b)(6) Motion to Dismiss Plaintiffs' First Amended Class Action Complaint (the "Complaint," ECF No. 7), states as follows:

## I. INTRODUCTION

This case is one of many in an avalanche of litigation throughout the country regarding the use of now-ubiquitous website analytics technology by hospitals and healthcare providers. Here, Plaintiffs Assiyah Fateen, Michael Johnston, and Sheila Sorvari (together "Plaintiffs") allege that Corewell employed commonly-used analytics tools, including the Meta Pixel, Google Analytics, DoubleClick, Google Tag Manager, and other "tracking tools" to intercept their communications with Corwell's website and disclose sensitive information to third-parties for marketing and advertising purposes. Importantly, Plaintiffs do not allege that these technologies were installed on Corewell's secure patient portal (because they were not). In fact, Plaintiffs pointedly admit that they "do not have the evidence that [Corewell] installed third-party trackers on its Patient Portal." (Compl., ¶ 3, n. 1.) Plaintiffs' allegations are limited to Corewell's public-facing website.

Plaintiffs' Complaint should be dismissed for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure for the following reasons.

*First*, Plaintiffs' claim for violation of the Electronic Communications Privacy Act fails because they cannot allege an unauthorized interception. Specifically, the ECPA is a one-party consent statute and Corewell cannot "intercept" its own communications. Plaintiffs further cannot establish application of the "crime-tort" exception.

*Second*, Plaintiffs' breach of fiduciary duty claim fails because they cannot establish either a fiduciary duty owed by Corewell or cognizable damages.

*Third*, Plaintiffs' breach of implied contract claim fails because they failed to properly allege mutual assent, consideration, or damages.

*Fourth*, Plaintiffs' negligence claim fails because they cannot establish a legally recognized duty for safeguarding online browsing activity and the damages they claim are insufficient under Michigan law.

*Fifth*, the alternative unjust enrichment claim fails because Plaintiffs did not plead a benefit conferred on Corewell and, even if a benefit were conferred, Plaintiffs did not allege an unjust retention of any benefit.

*Sixth*, Plaintiffs failed to plead a violation of the Michigan Consumer Protection Act with the required specificity to withstand a motion to dismiss.

*And seventh*, Plaintiffs' claim for violation of the Michigan Nonprofit Healthcare Corporation Reform Act fails because Plaintiffs do not and cannot establish the necessary elements of the claim.

## II. ALLEGED FACTS & CLAIMS

Corewell is a Michigan non-profit healthcare corporation headquartered in Grand Rapids, Michigan. (Compl., ¶ 18.) Corewell operates multiple hospitals in the state of Michigan. (*Id*. at ¶ 20.) Plaintiff Assiyah Fateen alleges that she is a resident of Detroit, Michigan, and that she has been a patient of Corewell since approximately 2020. (*Id*. at ¶¶ 15, 100.) Plaintiff Michael Johnston alleges that he is a resident of Macomb County, Michigan, and that he has been a patient of Corewell since 2010 (*Id*. at ¶¶ 16, 116.) Plaintiff Sheila Sorvari alleges that she is a resident of Oakland County, Michigan, and that she has been a patient of Corewell since 2022 (*Id*. at ¶¶ 17, 132).

Plaintiffs allege that Corewell operates a public website at https://www.beaumont.org (the "Website"). (*Id*. at ¶ 3). The Website, which is available to anyone with an internet connection, provides a variety of information and services, allowing individuals to research medical conditions, locate providers, and find health information, among other things. (*See id.* at ¶¶ 3, 9.) Plaintiffs generally allege that analytics technologies, including the Meta Pixel, Google Analytics, DoubleClick and Google Tag Manager were embedded into the source code of the website and allowed third parties to intercept Plaintiffs' communications with the Website. (*Id*. at ¶ 4.) Notably, Plaintiffs admit that they do not have evidence that tracking tools were deployed on Corewell's secure patient portal. (*Id*. at ¶ 3, n.1).[1]

According to Plaintiffs, the technologies deployed on the Website transmitted patient Protected Health Information ("PHI") and Personally Identifiable Information ("PII") to third parties for advertising purposes. (*Id*. at ¶¶ 8, 10.) Specifically, Plaintiffs claim that the Meta Pixel transmits information including "unique personal identifiers, computer IP addresses, patient status, specific search terms, health conditions and symptoms, treatments, physicians, bill pay activities and appointment details . . ." (*Id*. at ¶ 9.). Plaintiffs claim that this information is gathered through the Meta Pixel "to build profiles for the purpose of future targeting and marketing." (*Id*. at ¶ 7.)

Plaintiff Fateen alleges that she began using the Website and patient portal through her computer and mobile device in 2020 or earlier. (*Id*. at ¶ 101.) Specifically, she alleges that she used the Website to, among other things, search for providers, search for office locations, pay for medical services, schedule appointments, access the patient portal, and search for information relating to certain medical conditions. (*Id*. at ¶ 102.) Similarly, Plaintiff Johnston alleges that he

[1] Plaintiffs attempt to confuse the issue by combining the Website and the secure patient portal into a single defined term "Web Properties." But because, by Plaintiffs' own admission, there is no evidence that the patient portal employed third-party technologies, the portal is irrelevant here.

began using the Website in 2022 to search for locations, access the patient portal and search for information regarding medical conditions and treatments. (*Id*. at ¶ 118.) Plaintiff Sorvari also alleges that she began using the Website in 2022 and used it to search for providers and locations, access the patient portal, pay bills online and search for information regarding medical conditions and treatments. (*Id*. at ¶ 134.) None of the Plaintiffs allege, however, that they input Social Security numbers, birth dates, medical diagnoses, or patient records into the Website, or that any such information was disclosed to third parties.

Based on these allegations, Plaintiffs assert seven causes of action: (1) violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1) ("ECPA"); (2) breach of fiduciary duty; (3) breach of implied contract; (4) negligence; (5) unjust enrichment; (6) violation of the Michigan Consumer Protection Act, MCL 445.901, *et seq.* ("MCPA"); and (7) violation of the Michigan Nonprofit Health Care Corporations Reform Act, MCL § 550.140, *et seq*. (the "Reform Act"). Plaintiffs seek to represent two putative classes, including a nationwide class and a Michigan subclass consisting of "all patients and prospective patients" in the United States and Michigan, respectively, "whose PHI and PII was disclosed to a third party through Defendant's Web Properties without authorization or consent during the applicable statute of limitations period." (Compl., ¶¶ 201-202.) Plaintiffs seek actual, statutory, and various forms of equitable relief, along with attorneys' fees and costs. (*Id*. at pp. 70-71.)

## III. LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*.

Although the Court must draw all reasonable inferences in favor of the plaintiff, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*. at 679; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). Moreover, factual allegations that are merely consistent with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish plausibility of entitlement to relief even if it supports the possibility of relief. *Iqbal*, 556 U.S. at 678.

## IV. ARGUMENT

### A. Count I Fails to State a Claim for Violation of the ECPA.

In Count I of the Complaint, Plaintiffs allege that Corewell unlawfully intercepted and disclosed the electronic communications of Plaintiffs and members of the putative class in violation of the ECPA. To state a claim for violation of the ECPA, a plaintiff must show that "the defendant (1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *See In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 844 (N.D. Cal. 2017) (internal quotation marks omitted). Here, Corewell was the intended recipient of the alleged communications and, consequently, could not "intercept" any of Plaintiffs' communications.

The ECPA is a one-party consent statute. 18 U.S.C. § 2511(2)(d). As such, it does not apply where the alleged interceptor was a party to the communication—the so-called "party exception." Specifically, the statute provides:

> It shall not be unlawful . . . for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such

> communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

*Id*.

Here, the only communications Plaintiffs allege were intercepted were their interactions with Corewell's public Website. (Compl., ¶¶ 102, 118, 133.) Corewell was thus indisputably a party to the communications at issue and Plaintiffs cannot state a claim under the ECPA.

Plaintiffs attempt to circumvent application of the party exception by summarily alleging that the "crime-tort" exception-to-the-exception applies here. (Compl., ¶ 241.) But the crime-tort exception requires Plaintiffs to plausibly allege that Corewell intercepted the communication "for the purpose" of committing a crime or tort. 18 U.S.C. § 2511(2)(d). The word "purpose" in the statute is significant:

> Congress chose the word "purpose" for a reason. Therefore, the offender must have as her objective a tortious or criminal result. Had Congress intended for the act of recording itself to provide the tortious intent necessary, it could have chosen to define the exception in terms of interception of oral communications *resulting in* a tortious or criminal act. But Congress limited the cause of action to instances *where one party to the conversation deliberately seeks to harm the other participant* through the information intercepted.

*Caro v. Weintraub,* 618 F.3d 94, 100 (2d Cir. 2010) (second emphasis added). As the Sixth Circuit observed in considering the crime-tort exception, in light of the substantial statutory penalties available under the Act and "evil purposes" which it attempts to govern, "We think it is the use of the interception with intent to harm rather than the fact of interception that is critical to liability . . . ." *Boddie v. ABC, Inc.*, 881 F.2d 267, 270 (6th Cir. 1989) (internal quotations omitted). Other courts, including in Meta Pixel cases, have reached the same conclusion. *See, e.g., In Re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) ("Under this exception,

plaintiffs must allege that either the 'primary motivation or a determining factor in [the defendant's] actions has been to injure plaintiffs tortiously.'")

Not only must a plaintiff plead that the defendant intended harm, "a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent* of the intentional act of recording." *In re Google Cookie Placement Consumer Priv. Litig*, 806 F.3d 125, 145 (3rd Cir. 2015) (quoting *Caro*, 618 F.3d at 100) (emphasis in original). In other words, a "simultaneous tort arising from the act of recording itself is insufficient," because "[n]othing more is required after the interception is made for liability to attach based on this tort." *Caro*, 618 F.3d at 100-01. Consequently, Plaintiffs must allege Corewell acted with the intent to commit a crime or tort separate and distinct from the use of analytics technology on the Website.

The Complaint fails to allege either an intent to injure Plaintiffs and members of the putative class or an independent tort. In fact, the Complaint contains no allegation that Corewell acted with deliberate intent to harm. Instead, Plaintiffs allege that Corewell employed tracking technology for the purpose of advertising and marketing. (*See* Compl., ¶ 6.) Additionally, their claim is tethered to the alleged disclosure of browsing activity on the Website. Specifically, Plaintiffs claim that by "disclosing the content of patient communications . . . Defendant had a purpose that was tortious, criminal and designed to violate state and federal laws, including:" HIPAA, the FTC Act, and the Michigan Consumer Protection Act, MCL 445.903. (Compl., ¶ 240). Plaintiffs' ECPA claim alleges, in conclusory fashion, that "a disclosure that violates HIPAA is a violation of law that is independent of a violation of the ECPA." (Compl. at ¶ 245.) But this is a legal conclusion that this Court should disregard for purposes of this motion. Indeed, Plaintiffs

allege no facts to support a separate and distinct tort beyond this alleged interception and *simultaneous* disclosure.

Finally, to the extent Plaintiffs allege that Corewell procured a third-party to intercept the contents of electronic communications, that claim also fails as a matter of law. Indeed, courts have consistently held that the ECPA does not provide a private right of action against parties who allegedly "procured" a third-party interception. *See Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1246-47 (10th Cir. 2021) (holding that there is no civil ECPA claim for "procuring" or "aiding and abetting"); *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 169 (5th Cir. 2000) (same); *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d 1051, 1089 (N.D. Cal. 2015) (holding "there is simply no secondary liability (such as aiding and abetting) under the ECPA."). For all these reasons, Plaintiffs fail to state a claim under the ECPA.

**B. Count II Fails to Plead the *Prima Facie* Elements of Breach of Fiduciary Duty.**

In order to establish a claim for breach of fiduciary duty, a plaintiff must prove: (1) the existence of a fiduciary duty; (2) a breach of that duty; and (3) proximately caused damages. *Highfield Beach at Lake Michigan v. Sanderson*, 331 Mich. App. 636 (2020) (citing *Delphi Auto. PLC v. Absmeier*, 167 F. Supp. 3d 868, 884 (E.D. Mich. 2016). Here, Plaintiffs fail to allege the necessary elements of duty and damages.

Plaintiffs' breach of fiduciary duty claim fails because the allegations are insufficient as a matter of law. Plaintiffs allege, in conclusory fashion, that a "special relationship" existed "whereby [Corewell] became a fiduciary by its undertaking and guardianship of the Private Information . . ." (Compl., ¶ 266). However, Plaintiffs fail to allege facts supporting the existence of some fiduciary relationship with respect to the usage of Corewell's Website. Instead, Plaintiffs rely upon the physician-patient relationship to form the basis of this alleged duty, claiming that

"[m]edical providers have a duty to their patients to keep non-public medical information completely confidential . . . This duty arises from the implied covenant of trust and confidence that is inherent in the physician-patient relationship." (*See* Compl., ¶ 264.) But the proposed classes in this case are not limited to patients. (Compl., ¶¶ 201-202.) As such, the physician-patient relationship cannot plausibly form the basis of the fiduciary relationship alleged to exist here. Corewell's mere provision of a website, and individuals' use of it, in no way rises to the level of a fiduciary undertaking when that website is available to the public. Logically, many of the users of the Website are not patients, and information input into the Website may not be medical in nature. Under these circumstances, it would be unreasonable to infer a fiduciary and/or confidential relationship with every individual user of the Website.

Even if Plaintiffs had properly alleged a duty owed by Corewell with respect to its Website, their breach of fiduciary duty claim should still be dismissed for the failure to plead damages. Courts consistently hold that "only damages that arise from an actual, present injury, are cognizable under Michigan law." *Rakyta v. Munson Healthcare*, No. 354831, 2021 WL 4808339, at *3 (Mich. App., Oct. 14, 2021) (citing *Henry v. Dow Chem. Co*., 473 Mich. 63, 75-76 (2005)). "Michigan law requires more than a merely speculative injury." *Henry*, 473 Mich. at 72. The present physical injury requirement "more clearly defines who actually possesses a cause of action," "reduces the risks of fraud," and ensures "that there will be standards-legally comprehensible standards that guide the judicial branch's resolution of the matters brought before it." *Henry*, 473 Mich. at 76.

In this case, Plaintiffs do not claim to have suffered any quantifiable or compensable injury. They do not claim to have suffered any identity theft, misuse of funds, or impairment of credit due to any alleged exposure of information. Instead, they claim to have suffered a variety of abstract

injuries such as "violation of confidentiality" of PHI or PII, lost benefit of the bargain, diminished value of personal information, and the potential for "ongoing risk" to PHI or PII. (Compl., ¶¶ 114, 130, 146.) These speculative allegations of injury are simply not enough under Michigan law. Consequently, the breach of fiduciary duty claim fails.

### C. Count III for Breach of Implied Contract Fails to Allege Mutual Assent, Consideration and Damages.

Plaintiffs allege that, "as a condition of utilizing Defendant's Website and receiving services from Defendant's healthcare facilities and professionals, Plaintiffs and the Class Members provided their Private Information and compensation for their medical care." (Compl., ¶ 277.) Based on this allegation, Plaintiffs conclude that they and the putative class members "entered [into] an implied contract pursuant to which Defendant agreed to safeguard and not disclose their Private Information without consent." (*Id.* at ¶ 234 [*sic*][2].)

In Michigan, contracts can be implied in fact or implied in law. *See In re McKim Estate*, 238 Mich. App. 453, 457-58 (1999). An implied-in-fact contract arises "when services are performed by one who at the time expects compensation from another who expects at the time to pay therefor." *In re Estate of Lewis*, 168 Mich. App. 70, 75 (1988). Such a contract "does not exist, unless the minds of the parties meet, by reason of words or conduct." *Detroit v. Highland Park*, 326 Mich. 78, 100 (1949). Like an express contract, "[a]n implied contract must also satisfy the elements of mutual assent and consideration." *Mallory v. City of Detroit*, 181 Mich. App. 121, 127 (1989). In this case, Plaintiff failed to allege mutual assent and consideration to support formation of an enforceable contract, and, as set forth above with respect to Count II, Plaintiffs failed to establish the requisite element of cognizable damages.

---

[2] Count VI duplicates the numbers of previous paragraphs. (*See* Compl., pp. 62-63.)

**1. Plaintiffs failed to allege mutual assent.**

"[A]n implied-in-fact contract arises between parties when those parties show a mutual intention to contract." *Kingsley Assocs., Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 504 (6th Cir. 1995). A contract can be implied in fact where the intention as to it is "gathered by implication or proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances attending the transaction." *Erickson v. Goodell Oil Co.*, 384 Mich. 207, 212 (1970). Mutual assent, or a meeting of the minds, as to "all essential terms of a contract" is a "fundamental tenet of all contracts." *Burkhardt v. Bailey*, 260 Mich. App., 636, 655 (2004); *see also Emergency Dep't Physicians*, 507 F. Supp. 3d at 828 (dismissing claim for breach of implied contract for failure to allege mutual assent to terms of agreement).

Here, the Complaint vaguely refers to either Corewell's "Privacy Policy" or a separate "Notice of Privacy Practices" as a potential source of the terms of this purported implied contract. (Compl., ¶¶ 148-157, 276.) However, the sources provided for the language upon which Plaintiffs rely are hyperlinks that do not direct to any specific policy. (*Id.* at ¶¶ 152 n.37, 153 n.38, 176 n.73-74.) Consequently, the Complaint fails to identify any concrete terms of the purported implied contract, much less the specific conduct, language, or other pertinent circumstances from which an agreement to be bound can be inferred. Plaintiffs' allegations concerning the supposed contract(s) fall far short of alleging circumstances supporting an implication of mutual assent to "all" contractual terms. Absent allegations that the parties discussed, understood, or were even aware of the necessary terms, Plaintiffs have not alleged that a meeting of the minds was reached.

**2. Plaintiffs failed to allege consideration sufficient to support contract formation.**

Consideration consists of a bargained-for exchange. *See General Motors Corp. v. Dept. of Treasury, Revenue Div.*, 466 Mich. 231, 238 (2002) (citation omitted). "There must be a benefit

on one side, or a detriment suffered, or service done on the other." *Id*. at 238-239. Here, Plaintiffs do not allege that they provided any consideration for the alleged contract. They do not, for example, claim to have paid Corewell for the use of its Website. Nor could they, because the Website is accessible to anyone with an internet connection. And although they claim to have paid for medical care (Compl., ¶ 277), such payment does not constitute consideration because there is no nexus between those alleged payments and the purported agreement at issue. The alleged payments, in other words, were for medical treatment, *not* for Website usage or data security. That conclusion is inescapable given that the proposed classes include "all patients and prospective patients residing in the United States" and "[a]ll patients and prospective patients residing in the State of Michigan" whose information was disclosed through the Website. (Compl., ¶¶ 201-202.) These proposed classes, by definition, include many individuals who were not patients and therefore never paid Corewell for healthcare services, data security, or anything else.

Moreover, Plaintiff fails to allege that *Corewell* provided any consideration for the contract. Although consideration need not be substantial and can be as simple as a promise, it is black-letter law in Michigan that a party cannot enter a contract by making a promise they have already made. *See Mallory v. City of Detroit*, 181 Mich. App. 121, 127 (1989) ("Where a defendant has a preexisting duty . . . there can be no contract."); *Gen. Aviation, Inc. v. Cap. Region Airport Auth*., 224 Mich. App. 710, 715 (1997) ("A pledge to undertake a preexisting statutory duty is not supported by adequate consideration."). Where the law requires a defendant to take, or refrain from taking, certain actions, those actions cannot be recast as contractual obligations. *See id*. (affirming dismissal of contract claim where defendant owed a preexisting obligation under the Michigan Aeronautics Code).

Michigan courts have repeatedly affirmed that this principle applies to contracts—express and implied. *See, e.g.*, *Alar v. Mercy Mem. Hosp*., 208 Mich. App. 518, 525 (1995) (hospital's promise to keep patient's information confidential as part of treatment not consideration for alleged contract due to hospital's preexisting duty to protect information); *Powers v. Peoples Cmty. Hosp. Auth.*, 183 Mich. App. 550, 554 (1990); *Penner v. Seaway Hosp*., 169 Mich. App. 502, 511 (1988).

Here, Plaintiffs do not specify *any* consideration provided by Corewell. Nevertheless, to the extent Plaintiffs attempt to base an allegation of consideration on the obligations arising under HIPAA, the FTC Act, or other similar legal obligation, that is insufficient. Because a "promise to perform an existing legal duty is insufficient consideration," *Emergency Dep't Physicians P.C. v. United Healthcare, Inc.*, 507 F. Supp. 3d 814, 828 (E.D. Mich. 2020). Any alleged promise by Corewell to protect Plaintiffs' PII and PHI cannot support the formation of an enforceable contract.

**3. Plaintiffs fail to allege they suffered legally cognizable damages.**

A plaintiff asserting breach of contract must show damages. *See Miller-Davis Co. v. Ahrens Const., Inc.*, 495 Mich. 161, 178 (2014). Damages are not presumed; rather, they must be proved with "reasonable certainty" and are recoverable only if they "are the direct, natural, and proximate result of [a] breach." *Alan Custom Homes, Inc. v. Krol*, 256 Mich. App. 505, 512 (2003). Nor may damages be speculative. *See Doe*, 308 Mich. App. at 602 ("Because [plaintiff's] speculative damages derive from a possible future harm that might or might not occur, rather than directly from the breach of contract, plaintiff may not recover under contract law . . . .")

Plaintiffs do not claim to have suffered any legally cognizable contract damages. For example, they do not allege any facts suggesting that they or putative class members spent money on credit monitoring or incurred any other form of out-of-pocket losses arising from the use of

Corewell's Website. Accordingly, they do not claim to have suffered any actual, non-speculative loss as a result that can be recovered under a breach of contract theory.

**D. Count IV for Negligence Fails for Lack of Duty and Damages.**

To state a negligence claim, a plaintiff must plead facts demonstrating the existence of a duty, breach of that duty, causation, and damages. *Henry v. Dow Chem. Co*., 473 Mich. 63, 72 (2005). In this case, Plaintiffs fail to properly plead the existence of either a duty owed by Corewell or damages incurred by Plaintiffs and the putative classes.

**1. Plaintiffs fail to allege the existence of any legally recognized duty.**

"As part of a *prima facie* case of negligence, a plaintiff must show that defendant owed him a recognized duty of care." *Ross v. Glasser*, 220 Mich. App 183, 186 (1996) (citation omitted). "As a general rule, there is no duty that obligates one person to aid or protect another." *Williams v. Cunningham Drug Stores, Inc*, 429 Mich. 495, 499 (1988). For a duty to exist, there must be a "special relationship" between the persons. *Ross*, 220 Mich. App. at 187. Here, Plaintiffs allege no factual basis to support the existence of a duty.

Michigan does not recognize a duty to safeguard online browsing information. Additionally, as with their breach of fiduciary duty claim, Plaintiffs summarily allege that Corewell owed a duty as a medical provider. (Compl., ¶ 288.) But again, Corewell's Website is public-facing. Consequently, it cannot be said (and Plaintiffs do not allege) that Corewell is a medical provider in relation to every individual who browsed Corewell's website. Plaintiffs cannot base any alleged duty on the mere fact that Corewell provides a website.

Nor can Plaintiffs rely on HIPAA or the FTC Act to supply the missing duty. To determine whether a statute creates a particular duty with respect to a particular party, Michigan "courts consider two questions: (1) did the Legislature intend that the statute would prevent the type of

injury and harm actually suffered by the party; and (2) did the Legislature intend that the party was within the class of persons protected by the statute?" *Randall v. Michigan High Sch. Athl. Ass'n.*, 334 Mich. App. 697, 720 (2020) (citations omitted). Michigan courts have not interpreted whether HIPAA or the FTC Act can form the basis of an alleged duty with respect to data security. However, the intent of the Legislature is clear. Indeed, neither HIPAA nor the FTC Act provide a private right of action. *See Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006) ("Every district court that has considered this issue is in agreement that the [HIPAA] statute does not support a private right of action."); *Montgomery v. Kraft Foods Glob., Inc.*, No. 1:12-cv-00149, 2012 WL 6084167, at *1, n.2 (W.D. Mich. Dec. 6, 2012) ("[T]he Federal Trade Commission (FTC) Act, does not give rise to a private right of action.") (aff'd, 822 F.3d 304 (6th Cir. 2016)). Because neither statute provides a private right of action, some courts have declined to hold that either HIPAA or the FTC Act create an ascertainable duty. *See, e.g., Teeter v. Easterseals-Goodwill Northern Rocky Mountain, Inc.*, No. CV-22-96-GF-BMM, 2023 WL 2330241, at *4 (D. Mont., March 2, 2023) (holding that the plaintiff could not rely on either HIPAA or the FTC Act to provide a duty for her negligence claim).

Even if HIPAA or the FTC Act could conceivably provide a duty applicable here, Plaintiffs have not properly pleaded as much. Indeed, Plaintiffs do not specify how HIPAA could provide a duty relating to non-patient users of a public website, and thus how those users could be within the class of persons protected. Nor do Plaintiffs allege the specific duty imposed by the FTC Act that purportedly applies here. Instead, they refer generally to Section 45 of the FTC Act, which they allege creates "a duty to employ reasonable security measures to protect confidential data." (Compl., ¶ 292.) This is insufficient. *See In re Brinker Data Incident Litig.*, No. 18-cv-686, 2020 WL 691848, at *9 (M.D. Fla., January 27, 2020) (dismissing plaintiff's negligence *per se* claim because the plaintiffs failed to allege the specific duty imposed by the FTC Act allegedly

breached). Because they have not pleaded the existence of a duty, Plaintiffs cannot state a claim for negligence.

**2. Plaintiffs fail to plead cognizable damages.**

"Underlying [the] four elements [of a negligence claim] is the issue of injury, and it is well settled that, in Michigan, the injury complained of in a negligence action must be an actual, present injury." *Doe v. Henry Ford Health Sys.*, 308 Mich. App. 592, 600 (2014); *see also Rakyta*, 2021 WL 4808339, at *3 ("[O]nly damages that arise from an actual, present injury, are cognizable under Michigan law.") (citing *Henry*, 473 Mich. at 75-76).

Again, Plaintiffs must plead more than a mere speculative injury. *Henry*, 473 Mich. at 72. In this case, Plaintiffs only allege speculative injuries such as "violation of confidentiality" of PHI or PII, lost benefit of the bargain, diminished value of personal information, and the potential for "ongoing risk" to PHI or PII. (Compl., ¶¶ 114, 130, 146.) These are the same types of speculative injuries that were insufficient in *Henry* and *Rakyta* to demonstrate an actual, present injury or compensable damages. Consequently, Plaintiffs' negligence claim fails as a matter of law.

**E. Count V for Unjust Enrichment Fails for Lack of Benefit and Alleged Inequity.**

In the alternative to their "common law causes of action," Plaintiffs allege that they conferred a benefit on Corewell in the form of PHI and PII. (Compl., ¶ 304.) Plaintiffs further allege that Corewell unjustly retained that benefit at the expense of Plaintiffs and the putative classes. (*Id*. at ¶ 306.) To state a cause of action for unjust enrichment, a "plaintiff must establish (1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." *Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187, 195 (2006). Notably, "not all enrichment is necessarily unjust. The key to determining whether enrichment is unjust is determining whether a party unjustly

received and retained an independent benefit." *Landstar Express Am., Inc. v. Nexteer Auto. Corp.*, 319 Mich. App. 192, 205 (2017) (dismissing unjust enrichment claim where "benefit defendant received . . . was nothing more than what all the parties contemplated"). Against this standard, Plaintiffs' unjust enrichment claim fails for three reasons.

First, they do not plausibly allege that they conferred any benefit on Corewell. Plaintiffs claim that they, and members of the putative class, conferred a benefit in the form of PHI and PII. (Compl., ¶ 304.)[3] Plaintiffs then summarily conclude that the provision of PHI and PII provided Corewell with "economic intangible, and other benefits, including substantial monetary compensation." (*Id.*) Plaintiffs do not plead facts to support this conclusion. Nor could they. "Courts have, however, routinely rejected the proposition that an individual's personal identifying information has an independent monetary value." *In re Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 592 (N.D. Ill. 2022) (internal quotation omitted) (collecting cases and dismissing unjust enrichment claim for failure to allege a benefit conferred on defendant); *Hall v. Centerspace, LP,* No. 22-cv-2028, 2023 WL 3435100, at *6 (D. Minn. May 12, 2023) (dismissing unjust enrichment claim where plaintiff did "not identify a benefit plausibly conferred upon [defendant] through the provision of PII"). The claim fails for this reason alone.

Second, even if the provision of PHI or PII could be considered a form of benefit, Plaintiffs additionally fail to allege that they provided the information in exchange for website data security services. In fact, the only thing Plaintiffs claims they paid for is "medical services." (Compl., ¶ 309.) Monetary payment is wholly separate and distinct from use of the Website. Indeed, any

---

[3] In the Complaint, Plaintiffs also refers to "monies paid" by Plaintiffs and the putative class members (Compl., ¶ 308), but it is unclear to what "monies" Plaintiffs could be conceivably referring. Again, the proposed classes in this case are not limited to patients (or paying patients). (Compl., ¶¶ 201-202.)

individual with an internet connection has the ability to access and use Corewell's website.

And third, even if Plaintiffs conferred some sort of benefit on Corewell in the form of monetary payment, they fail to allege any injustice in retaining it. Indeed, there is no allegation that they failed to receive the services sought; indeed, the quality of Corewell's medical care is not at issue. Nor do Plaintiffs allege that Corewell understood that Plaintiffs (supposedly) believed they were paying for data privacy in addition to healthcare services. *See, e.g.*, *Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1072 (C.D. Ill. 2016) (dismissing unjust enrichment claim against restaurant because plaintiff "did not pay for a side order of data security and protection; it was merely incident to her food purchase, as is the ability to sit at a table to eat her food, or to use Jimmy John's restroom."). For all these reasons, Plaintiffs' unjust enrichment claim fails and Count V should be dismissed.

### F. Count VI Fails to Meet the Pleading Standard Required to State a Claim Under the Michigan Consumer Protection Act.

Plaintiffs fail to plead a violation of the Michigan Consumer Protection Act, Mich. Comp. Laws. § 445.901, *et seq.* ("MCPA") with the specificity required by law. "The provisions of the MCPA are to be construed with reference to the common-law tort of fraud." *In re OnStar Cont. Litig.*, 278 F.R.D. 352, 377 (E.D. Mich. 2011) (citing *Kussy v. Home Depot U.S.A., Inc.*, 2006 WL 3447146 (E.D. Mich. 2006); *Mayhall v. A.H. Pond Co., Inc*., 129 Mich. App. 178 (1983)). The Federal Rules of Civil Procedure provide that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). To satisfy the requirements of Rule 9(b), a plaintiff must "at a minimum allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex LP*, 2 F.3d 157, 161-162 (6th Cir.1993).

To establish a claim for fraud or misrepresentation, a plaintiff must plead, with particularity: (1) that the defendant made a material misrepresentation; (2) the defendant knowingly made the false representation with the intent that the plaintiff would act upon it; (3) that the plaintiff acted in reliance upon it; and (4) resulting damages. *Baker v. Arbor Drugs, Inc.*, 215 Mich.App. 198 (1996). A material fact for purposes of the MCPA is "one that is important to the transaction or affects the consumer's decision to enter into the transaction." *Zine v. Chrysler Corp*., 236 Mich.App. 261, 283 (1999). Under the MCPA, a "transaction" is the business conducted between the parties. *Id.* at 280.

Here, Plaintiffs have not pleaded appropriate facts supporting a claim that Corewell made material misrepresentations (or concealed material facts) about its cybersecurity practices or the Website. As with their breach of implied contract claim, the sources Plaintiffs provide for the language upon which they rely are hyperlinks that do not direct to any specific policy. (Compl. at ¶¶ 318 n.75.) They do not claim that Corewell's cybersecurity practices did affect or would have affected their decision to receive medical services from Corewell or use the Website, and were thus "material." Nor does she allege the time, place, or content of any alleged misrepresentation.[4] Without knowing the specific statements on which Plaintiffs allegedly relied, the Court cannot determine whether any alleged misrepresentation is actionable. *See Williams v. Scottrade, Inc.*, No. 06-10677, 2006 WL 2077588, at *7 (E.D. Mich. 2006).

Moreover, Plaintiffs do not state a plausible factual basis for the Court to conclude that Corewell acted with an intent to deceive. *In re Packaged Ice*, 779 F. Supp. 2d at 642, 665-66 (E.D. Mich. 2011) (dismissing MCPA claim as a matter of law because, *inter alia*, plaintiff failed to

[4] To the extent Plaintiffs purport to rely on the content of any policy found on https://www.beaumont.org/patients-families/patients-rights-privacy/privacy, which contains links to several separate policies, Plaintiffs have not identified where any specific representation(s) can be found. (Compl. ¶ 318 n.75.)

allege that defendant acted with an intent to deceive); *Rodriguez v. Berrybrook Farms, Inc*., 1990 U.S. Dist. LEXIS 7678, at *39-*40 (W.D. Mich. 1990) (holding that the defendants did not violate the MCPA based on the plaintiffs' failure to show “that the defendants intended to deceive them or knowingly or recklessly provided them with false information”). Plaintiffs summarily allege that Corewell “intended to mislead . . . Plaintiffs” and the putative Michigan subclass. (Compl., ¶ 322.) But they fail to include factual support for this conclusion. For example, they do not assert facts demonstrating when or how any alleged misrepresentations were made or how information was purportedly concealed. Plaintiffs’ allegations are nothing more than naked assertions devoid of factual enhancement that do not even satisfy the liberal pleading standard of Rule 8 of the Federal Rules of Civil Procedure, let alone the particularity standard of Rule 9. *See Ascroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Finally, Plaintiffs cannot establish actual damages. Indeed, as set forth in detail throughout this brief, Plaintiffs’ Complaint contains no allegation of any actual, cognizable damages. For all of these reasons, Plaintiffs’ MCPA claim should be dismissed.

### G. Count VII Fails to Plead a Violation of the Michigan Nonprofit Healthcare Corporation Reform Act.

In their final cause of action, Plaintiffs allege that Corewell violated the Michigan Nonprofit Health Care Corporation Reform act, MCL § 550.140, *et seq.* (the “Reform Act”). Specifically, Plaintiffs claim that Corewell violated section 406(1) of the Reform Act by “failing to adequately safeguard Plaintiffs’ PII/PHI from unauthorized access by third party actors.” (Compl., ¶ 331.) The Reform Act provides:

> A health care corporation shall, in order to ensure the confidentiality of records containing personal data that may be associated with identifiable members, use reasonable care to secure these records from unauthorized access and to collect only personal data that are necessary for the proper review and payment of claims and for health care operations, treatment, and research.

MCL § 550.1406(1).

At the outset, the Reform Act was intended to provide the Michigan Commissioner of Insurance the power to regulate nonprofit health care corporations "to secure for all the people of [Michigan] . . . the opportunity for access to health care services at a fair and reasonable price." MCL § 550.1102(2); *see also U.S. v. Blue Cross Blue Shield of Michigan*, 809 F.Supp.2d 665, 666-667 (E.D. Mich. 2011). The Reform Act was not intended to provide data privacy regulations for healthcare entities and, as such, there is no case law directly addressing the issue presented here.

Regardless, Plaintiffs plead no facts to establish a claim under the Reform Act. Critically, Plaintiffs fail to plead that Corewell failed to safeguard "personal data," which is defined by the statute as "a document incorporating medical or surgical history, care, treatment, or service; or any other similar record, including an automated or computer accessible record, relative to a member, which is maintained or stored by a health care corporation." MCL § 550.1107(4). Plaintiffs allege that they used the Website to search for providers or locations, pay for medical services, schedule appointments, access the secure patient portal, and search for information regarding medical conditions and treatments. (Compl., ¶¶ 102, 118, 134.) None of these allegations rises to the definition of "personal data" under the Reform Act. Plaintiffs have not pleaded the existence of any document incorporating medical or surgical history. Nor do they plead that website browsing activity contained any information "maintained or stored" by Corewell. Plaintiffs' claim under the Reform Act should therefore be dismissed.

## V. CONCLUSION

For all the foregoing reasons, Corewell respectfully requests that the Court grant its motion to dismiss Plaintiffs' First Amended Class Action Complaint.

Respectfully Submitted,

Dated: March 28, 2025

MCDONALD HOPKINS PLC

By: */s/Michael G. Latiff*

Michael G. Latiff
39533 Woodward Avenue, Suite 318
Bloomfield Hills, Michigan 48304
(248) 220-1351
mlatiff@mcdonaldhopkins.com

Jennifer W. Torrez (*Pro Hac Vice* forthcoming)
300 N. LaSalle St., Ste. 1400
Chicago, IL 60654
(312) 280-0111
jtorrez@mcdonaldhopkins.com

*Attorneys for Defendant Corewell Health d/b/a Beaumont Health*

**CERTIFICATE OF COMPLIANCE WITH W.D. MICH. LCivR 7.2(b)(ii)**

Pursuant to Local Civil Rule 7.2(b)(i)&(ii), Defendant's Memorandum in Support of its Motion to Dismiss Plaintiffs' First Amended Class Action Complaint does not exceed 10,800 words, including headings, footnotes, citations and quotations. Microsoft Word 2016 was used to generate a word count for the above-mentioned Brief of approximately 7458 words.

Respectfully Submitted,

Dated: March 28, 2025

MCDONALD HOPKINS PLC

By: */s/Michael G. Latiff*

Michael G. Latiff
39533 Woodward Avenue, Suite 318
Bloomfield Hills, Michigan 48304
(248) 220-1351
mlatiff@mcdonaldhopkins.com

Jennifer W. Torrez (*Pro Hac Vice* forthcoming)
300 N. LaSalle St., Ste. 1400
Chicago, IL 60654
(312) 280-0111
jtorrez@mcdonaldhopkins.com

*Attorneys for Defendant Corewell Health d/b/a Beaumont Health*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of March, 2025, I served the forgoing Defendant's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint, Memorandum in Support, Certificate of Compliance with W.D. Mich. LCivR 7.2(b)(ii), and Certificate of Service through the Court's CM/ECF system, which will send notification of such filing to all attorneys of record.

By: */s/Michael G. Latiff*
Michael G. Latiff