**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| ASSIYAH FATEEN, MICHAEL JOHNSTON, and SHEILA SORVARI, *on behalf of themselves and all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>COREWELL HEALTH d/b/a BEAUMONT HEALTH,<br><br>Defendant. | Case No. 24-cv-01216<br><br>Hon. Paul L. Maloney<br><br>**ORAL ARGUMENT REQUESTED** |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**


INTRODUCTION ........................................................................................................ 1

ALLEGED FACTS & CLAIMS ................................................................................... 3

LEGAL STANDARD.................................................................................................. 5

ARGUMENT .............................................................................................................. 6

I. PLAINTIFFS' FEDERAL WIRETAP ACT CLAIM IS NOT FORECLOSED BECAUSE THE CRIME-TORT EXCEPTION APPLIES. ........................................ 6

A. The Crime-Tort Exception Applies. .................................................................. 6

B. Plaintiffs Allege that Beaumont Acted with Intent. ........................................... 8

C. Factual Questions Should Not Be Resolved on the Pleadings. ............................ 9

D. The Contents of Plaintiffs' Communications Were Intercepted. ....................... 10

II. PLAINTIFFS' COMMON LAW CLAIMS WITHSTAND A MOTION TO DISMISS. 11

A. Plaintiffs Plead the *Prima Facie* Elements of Breach of Fiduciary Duty. ................... 11

1. Plaintiffs Allege Fiduciary Duty. .................................................................. 11

2. Plaintiffs Allege Damages. .......................................................................... 12

B. Plaintiffs Plausibly Allege Breach of Implied Contract. .................................. 14

1. Plaintiffs Allege Mutual Assent. .................................................................... 14

2. Plaintiffs Allege Consideration. .................................................................... 15

3. Plaintiffs Allege Damages. .......................................................................... 16

C. Plaintiffs Allege Duty and Damages in Support of their Negligence Claim. ............... 16

1. Plaintiffs Allege Duty. ................................................................................ 17

2. Plaintiffs Allege Damages. .......................................................................... 19

D. Plaintiffs Allege Benefit and Inequity in Support of Unjust Enrichment. ..................... 20

III. PLAINTIFFS ALLEGE VIABLE STATUTORY CLAIMS. ..................................... 21

A. The More Stringent Pleading Requirements of Federal Rule 9(b) Do Not Apply to the Michigan Consumer Protection Act. ............................................................ 21

B. Plaintiffs Plead a Violation of the Michigan Nonprofit Health Care Corporations Reform Act. ................................................................................................ 23

CONCLUSION ......................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases** **Page(s)**


*A.D. v. Aspen Dental Mgmt., Inc.*,
2024 WL 4119153 (N.D. Ill. Sept. 9, 2024) ........ 2, 7

*Allen v. Michigan State Univ.*,
2024 WL 4982523 (Mich. Ct. App. Dec. 4, 2024) ........ 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 5

*Bell v. Michigan Council 25 of Am. Fed'n of State, Cnty., Mun. Emps.*,
2005 WL 356306 (Mich. Ct. App. Feb. 15, 2005) ........ 3, 17, 18

*Brackett v. Focus Hope, Inc.*,
482 Mich. 269 (2008) ........ 24

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010) ........ 7

*Castillo v. Costco Wholesale Corp.*,
2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) ........ 2, 7

*Cent. Cartage Co. v. Fewless*,
232 Mich. App. 517 (1998) ........ 13

*Conley v. Gibson*,
355 U.S. 41 (1957) ........ 5

*Delphi Auto PLC v. Absmeier*,
167 F. Supp. 3d 868 (E.D. Mich., 2016) ........ 11

*Desnick v. Am. Broad. Companies, Inc.*,
44 F.3d 1345 (7th Cir. 1995) ........ 7

*Directv v. Treesh*,
487 F.3d 471 (6th Cir. 2007) ........ 5, 15

*Doe v. Henry Ford Health Sys.*,
308 Mich. App. 592 (2004) ........ 19

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ........ 10, 11

*Doe v. Smith*,
429 F.3d 706 (7th Cir. 2005) ........ 9

*Gay v. Garnet Health*,
2024 WL 4203263 (S.D.N.Y. Sept. 16, 2024)............................................................... 13, 20

*Gen. Acquisition, Inc. v. GenCorp Inc.*,
766 F. Supp. 1460 (S.D. Ohio 1990) ............................................................................. 13

*Gen. Motors Corp. v. Dep't of Treasury, Revenue Div.*,
466 Mich. 231 (2002) ...................................................................................................... 15

*Henry v. Dow Chem. Co.*,
473 Mich. 63 (2005) ................................................................................................ 16, 19

*Higgins v. Monroe Evening News*,
404 Mich. 1 (1978) .......................................................................................................... 15

*Highfield Beach at Lake Michigan v. Sanderson*,
331 Mich. App. 636 (2020)............................................................................................. 11

*Hughes v. Nocerini*,
2024 WL 656006 (Mich. Ct. App. Feb.15, 2024)...................................................... 14, 15

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015)............................................................................................... 7

*In re Grp. Health Plan Litig.*,
709 F. Supp. 3d 707 (D. Minn. 2023)................................................................................ 9

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........................................................................... 7, 9

*In re OnStar Cont. Litig.*,
278 F.R.D. 352 (E.D. Mich. 2011) .................................................................................. 22

*In re Packaged Ice Antitrust Litig.*,
779 F. Supp. 2d 642, 666 (E.D. Mich. 2011)................................................................... 22

*In re Shields Health Care Grp., Inc. Data Breach Litig.*,
721 F. Supp. 3d 152 (D. Mass. 2024) ........................................................................... 3, 11

*Isidore Steiner, DPM, PC v. Bonanni*,
299 Mich. App. 265 (2011)............................................................................................ 3, 12

*Jolls v. Burgess*,
252 Mich. 437 (1930) ...................................................................................................... 16

*K.L. v. Legacy Health*,
2024 WL 4794657 (D. Or. Nov. 14, 2024)..................................................................... 2, 7

*Kussy v. Home Depot U.S.A., Inc.*,
2006 WL 3447146 (E.D. Mich. 2006) .......... 22

*Lugo v. Inova Health Care Servs.*,
2025 WL 905191 (E.D. Va. Mar. 25, 2025) .......... 2, 7

*Mason v. Wright Bros. Constr. Co., Inc.*,
2025 WL 939709 (E.D. Tenn. Mar. 27, 2025) .......... 20

*Mayhall v. A.H. Pond Co., Inc.*,
129 Mich. App. 178 (1983) .......... 22

*McDill v. McDonald Co-op. Dairy Co.*,
91 Mich. App. 611 (1979) .......... 16

*McInerney v. Detroit Trust Co.*,
279 Mich. 42 (1937) .......... 14

*Melynchenko v. Clay*,
152 Mich. App. 193 (1986) .......... 3, 11

*Menge v. City of Highland Park*,
2022 WL 54544 (E.D. Mich. Jan. 5, 2022) .......... 9

*Michels v. Monaco Coach Corp.*,
298 F. Supp. 2d 642 .......... 22

*Morris Pumps v. Centerline Piping, Inc.*,
273 Mich. App. 187 (2006) .......... 20, 21

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
2024 WL 4350328 (E.D. Pa. Sept. 30, 2024) .......... 2, 7

*People v. Walker*,
2011 WL 6786935 (Mich. Ct. App. Dec. 27, 2011) .......... 21

*Perlin v. Time Inc.*,
237 F. Supp. 3d 623 (E.D. Mich. 2017) .......... 20

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) .......... 8

*Rakyta v. Munson Healthcare*,
2021 WL 4808339 (Mich. Ct. App. Oct. 14, 2021) .......... 13, 19

*Randall v. Michigan High Sch. Athletics Ass'n*,
334 Mich App. 697 (2020) .......... 18

*Riddle v. McLouth steel Prods. Corp.*,
440 Mich. 85 (1992) .......... 17

*Rogers v. Horvath*,
65 Mich. App. 644 (1975) .......... 3, 18

*Rudd v. Pittman*,
2021 WL 230112 (W.D. Mich. Jan. 22, 2021) .......... 25

*Smith v. Loyola Univ. Med. Ctr.*,
2024 WL 3338941 (N.D. Ill. July 9, 2024) .......... 2, 7

*Stanton v. Dachille*,
186 Mich. App. 247 (1990) .......... 16

*State Farm Mut. Auto. Ins. Co. v. BMW of N. Am., LLC*,
2009 WL 2447612 (E.D. Mich. Aug. 7, 2009) .......... 22

*Strong v. LifeStance Health Grp. Inc.*,
2025 WL 317552 (D. Ariz. Jan. 28, 2025) .......... 2, 7

*In re Facebook, Inc. Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .......... 3, 12

*Vidosh v. Holsapple*,
1987 WL 273164 (E.D. Mich. Feb. 2, 1987) .......... 13

*W.W. v. Orlando Health, Inc.*,
2025 WL 722892 (M.D. Fla. Mar. 6, 2025) .......... 9

*Weddle v. WakeMed Health*,
2023 WL 8369786 (N.C. Super. Dec. 4, 2023) .......... 3, 12

**Statutes**

15 U.S.C. § 45 .......... 18

18 U.S.C. § 2510 .......... 10

18 U.S.C. § 2511 .......... 5, 6

42 U.S.C. § 1320d .......... 8

MCL § 445.901 .......... 5

MCL § 550.1107 .......... 24

MCL § 550.140 .......... 5

MCL § 550.1406 .......... 23

MICH. COMP. LAWS ANN. § 445.903 .......... 23

**Rules**

Fed. R. Civ. P. 9 .......... 21, 22, 23

Fed. R. Civ. P. 15 .......... 25

Fed. R. Civ. P. 23 .......... 22

**Regulations**

45 C.F.R. § 164.530 .......... 18

Plaintiffs Assiyah Fateen, Michael Johnston, and Sheila Sorvari ("Plaintiffs") respectfully state the following in opposition to Defendant Corewell Health d/b/a Beaumont Health's ("Beaumont") Motion to Dismiss Plaintiffs' First Amended Class Action Complaint.

**INTRODUCTION**

This case seeks to hold Beaumont accountable for its unlawful use of third-party tracking technologies to intercept and to disclose its patients' private and protected communications. For years, Beaumont has deployed a host of third-party tracking technologies, including the Meta Pixel, Google Analytics, DoubleClick, and Google Tag Manager (collectively, "Tracking Tools"), on its website (the "Website") and patient portal (the "Portal" and together with the Website, the "Web Properties") to intercept personally identifiable information ("PII") and protected health information ("PHI") that it wanted to acquire and disclose to Meta and Google for financial gain.

Beamont's interception and disclosure of its patients' PII and PHI was *not* done in error. Rather, Beaumont made a number of conscious decisions and took many deliberate acts including, but not limited to, partnering with various AdTech companies such as Meta, installing numerous Tracking Tools on its Web Properties, and configuring them to capture the precise highly sensitive and valuable information from its patients even though doing so was contrary to its own privacy policies which mandate that Beaumont must keep its patients' PHI and PII confidential. Beaumont's culpability is not reasonably in dispute as it could have asked permission from its patients and prospective patients to acquire their information. Evidently valuing the acquisition of this information (and the marketing, targeting, and analytics benefits it enabled) over its patients' privacy rights, Beaumont never sought their authorization or consent.

Now that its data collection practices are facing the prospect of judicial scrutiny, Beaumont attempts to minimize its unlawful conduct by contending that the use of Tracking Tools is

ubiquitous and bemoaning the "avalanche of litigation throughout the country" regarding the use of these tools. *See* Memorandum in Support of its Motion to Dismiss ("MTD" or "Motion"), ECF No. 9 at 1. The fact that such Tracking Tools may be ubiquitous does not absolve Beaumont of liability as it is a covered entity under the Health Insurance Portability and Accountability Act ("HIPAA") and—as such—it has a duty to obtain informed consent from its patients before deploying Tracking Tools to acquire and to disclose their health information to unauthorized third parties.[1]

Plaintiffs seek to hold Beaumont liable on this basis, alleging a claim under the Electronic Communications Privacy Act ("ECPA") as well as common law and statutory claims. Beaumont contends that it is not liable under ECPA because the party exception forecloses liability, and the crime-tort exception does not apply. But courts nationwide have found that the crime-tort exception applies where a defendant discloses health information like the information Plaintiffs allege was disclosed here and through the same Tracking Tools that Beaumont employed.[2]

Plaintiffs' additional common law and statutory claims are likewise sufficiently pled. Beaumont repeatedly attempts to evade liability by denying it had any duty at all with respect to Plaintiffs and their PHI and PII. This position is contrary to long-standing and well-reasoned

[1] Consistent with this duty, Meta prohibits companies like Beaumont from disclosing to it health information, financial information, and other categories of sensitive information. Despite its representations in its privacy policies not to mention these admonitions from Meta, Beaumont decided to use Tracking Tools on its Web Properties.

[2] *See, e.g.*, *Lugo v. Inova Health Care Servs.*, 2025 WL 905191, at *7 (E.D. Va. Mar. 25, 2025); *Strong v. LifeStance Health Grp. Inc.*, 2025 WL 317552, at *5 (D. Ariz. Jan. 28, 2025); *Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136, at *7 (W.D. Wash. Nov. 14, 2024); *K.L. v. Legacy Health*, 2024 WL 4794657, at *6 (D. Or. Nov. 14, 2024); *A.D. v. Aspen Dental Mgmt., Inc.*, 2024 WL 4119153, at *3 (N.D. Ill. Sept. 9, 2024); *Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, 2024 WL 4350328, at *5 (E.D. Pa. Sept. 30, 2024); *Smith v. Loyola Univ. Med. Ctr.*, 2024 WL 3338941, at *7 (N.D. Ill. July 9, 2024).

decisions from this circuit and nationwide that have held that healthcare providers like Beaumont have a duty to protect PHI and PII from unauthorized disclosure.[3] Beaumont's motion is also premature because it asks the Court to make factual determinations that are inappropriate at this stage of the litigation. For the reasons discussed herein, Beaumont's Motion should be denied in its entirety.[4]

## ALLEGED FACTS & CLAIMS

Beaumont is a Grand Rapids, Michigan-based health care provider operating three hospital systems that collectively maintain 1,778 licensed beds and employ 3,100 physicians. ¶¶ 18, 20.[5] In providing healthcare services, Beaumont operates its Web Properties, which it encourages patients and prospective patients to use to communicate about symptoms and conditions, research treatments, lookup physicians, schedule appointments, and pay their bills. ¶ 3. On its Web Properties, and unbeknownst to its patients and prospective patients, Beaumont deployed Tracking Tools to intercept PII and PHI that it wanted to acquire and disclose to Meta and Google. *See, e.g.*,

---

[3] *See, e.g.*, *Melynchenko v. Clay*, 152 Mich. App. 193, 197 (1986); *In re Shields Health Care Grp., Inc. Data Breach Litig.*, 721 F. Supp. 3d 152, 165 (D. Mass. 2024); *Weddle v. WakeMed Health*, 2023 WL 8369786, at *8 (N.C. Super. Dec. 4, 2023); *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019); *Isidore Steiner, DPM, PC v. Bonanni*, 299 Mich. App. 265, 267 (2011); *Bell v. Michigan Council 25 of Am. Fed'n of State, Cnty., Mun. Emps.*, 2005 WL 356306, at *5 (Mich. Ct. App. Feb. 15, 2005); *Rogers v. Horvath*, 65 Mich. App. 644, 647 (1975).

[4] Beaumont contends in its Motion that it did not deploy Tracking Tools in its Portal. MTD at 1. However, Plaintiffs plausibly allege that Beaumont deployed Tracking Tools in its Portal based on extensive pre-suit investigation including consulting with an expert, which revealed, among other things, that Beaumont embeds third-party tracking codes on the log-in pages for the Portal and on bill pay webpages. The Court should not accept Beaumont's self-serving denials of Plaintiffs' well-pled allegations at this stage of the litigation. It is very telling that Beaumont has not—and cannot—deny that it has deployed Tracking Tools on its Website. That, at a minimum, warrants denial of the pending Motion.

[5] All paragraph citations are to Plaintiffs' First Amended Class Action Complaint (the "FAC"). ECF No. 7.

¶¶ 4-9, 75-96. This included patient information such as personal identifiers, computer IP addresses, patient status, search terms, health conditions and symptoms, treatments, physicians, bill pay activities, and appointment details. ¶ 9.

Plaintiffs Assiyah Fateen, Michael Johnston, and Sheila Sorvari are Michigan residents and patients who used Beaumont's Web Properties. ¶¶ 15-17, 101, 118, 134. Plaintiff Fateen used Beaumont's Web Properties since 2020. ¶ 101. During that time, she used Beaumont's Web Properties to search for information regarding her medical conditions and medical treatments for those conditions. ¶ 102. For example, in or around January 2023, Plaintiff Fateen used Beaumont's Web Properties to search for specialty providers, including a dermatologist, and disclosed information about her skin conditions. ¶¶ 102-03. Plaintiff Johnston similarly used Beaumont's Website in 2022 and 2023 to search for information regarding his medical conditions, which included sleep apnea and pulmonary issues, as well as specialty physicians and medical treatments for those issues. ¶¶ 118-19. Plaintiff Sorvari began using Beaumont's Web Properties in 2022. ¶ 134. Since that time, she has searched for information regarding medical conditions and specialty doctors such as an ophthalmologist, orthopedist, cardiologist, and physical therapist. ¶¶ 134-35. After each Plaintiff provided their PHI and PII to Beaumont, they began receiving related advertisements for medical treatments, doctors, and medical services. ¶¶ 105, 121, 137.

Beaumont represents in its privacy policies that it will keep PHI and PII private and confidential and that it will only disclose PHI under limited circumstances, which do not apply here. ¶¶ 148-49. For example, Beaumont represents in its Joint Notice of Privacy Practices that it "will only use your health information for purposes specifically allowed by federal and state laws or regulations unless you provide written authorization. If your health information is sought for a use that requires your written authorization, you will be told the reason for the request, who is

asking for the information and what information is requested." ¶ 150. Beaumont also represents that it has "established website policies to protect the privacy of our website visitors" and "[a]ny and all information collected on this website will be kept strictly confidential and will not be sold, reused, rented, loaned, traded, leased or otherwise disclosed without prior consent." ¶ 152.

Based on those well-pled allegations, Plaintiffs assert seven causes of action: (i) Violation of the ECPA, 18 U.S.C. § 2511(1); (ii) Breach of Fiduciary Duty/Confidentiality; (iii) Breach of Implied Contract; (iv) Negligence; (v) Unjust Enrichment; (vi) Violation of the Michigan Consumer Protection Act ("MCPA"), MCL § 445.901; and (vii) Violation of the Michigan Nonprofit Health Care Corporations Reform Act, MCL § 550.140. *See* ¶¶ 221-332.

## LEGAL STANDARD

Rule 8(a)(2) requires only a short and plain statement showing that the pleader is entitled to relief, giving "defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. This standard does not require inclusion of "detailed factual allegations," rather the complaint must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. In deciding a Rule 12(b)(6) motion to dismiss, the court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all reasonable inferences in favor of the plaintiff." *Directv v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

## ARGUMENT

### I. PLAINTIFFS' FEDERAL WIRETAP ACT CLAIM IS NOT FORECLOSED BECAUSE THE CRIME-TORT EXCEPTION APPLIES.

Plaintiffs allege that Beaumont violated the ECPA, which prohibits the intentional (a) interception of electronic communications, (c) disclosure of electronic communications, and (d) using the contents of those electronic communications. ¶¶ 221-61; 18 U.S.C. § 2511(1)(a), (c), (d). Beaumont contends that it did not intercept the content of Plaintiffs' communications with Beaumont's Website and Portal because its conduct falls within the so-called "party exception." MTD 5-8. Beaumont also appears to challenge the sufficiency of Plaintiffs' allegations that it acted intentionally, and that the information Beaumont intercepted constitutes "contents" under the ECPA. *Id.* at 7-8. These arguments are unpersuasive for the reasons stated below.

#### A. The Crime-Tort Exception Applies.

Although Beaumont argues it cannot be liable under the ECPA as a party to the communications, this is not so because Plaintiffs allege Beaumont's criminal or tortious purpose. *Compare* MTD at 5-6, *with* ¶¶ 235, 240. The "party exception" provides that a party shall not be liable under the ECPA where the alleged interceptor was a party to the communication. *See* 18 U.S.C. § 2511(2)(d). However, as Beaumont recognizes, the ECPA also provides an exception to the party exception. This second exception, referred to as the "crime-tort exception," states that the party exception does not apply when the party intercepted the communication "for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." *Id.* Here, the crime-tort exception applies because Beaumont, among other things, violated HIPAA. *See, e.g.*, ¶¶ 240-53.

Courts interpret the crime-tort exception as requiring only "sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal

act that is *independent* of the intentional act of recording." *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 144 (3d Cir. 2015) (emphasis in original) (quoting *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010)). The crime-tort exception focuses on whether the purpose for the interception—its intended use—was criminal or tortious. *See, e.g.*, *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 796 (N.D. Cal. 2022); *Desnick v. Am. Broad. Companies, Inc.*, 44 F.3d 1345, 1353 (7th Cir. 1995).

Courts nationwide have consistently found that the crime-tort exception applies where the plaintiff alleges that a healthcare defendant—like Beaumont—knowingly collects and transmits information that constitutes individually identifiable health information ("IIHI") in violation of HIPAA for the purpose of financial gain. *See, e.g.*, *Lugo*, 2025 WL 905191, at *7 ("Courts around the country . . . have permitted the invocation of the ECPA's crime-tort exception when plaintiffs allege violations of HIPAA and other state healthy privacy laws"); *Strong*, 2025 WL 317552, at *5 (same); *Castillo*, 2024 WL 4785136, at *7 ("Plaintiffs plausibly allege that the crime-tort exception applies because Costco violated HIPAA"); *Legacy Health*, 2024 WL 4794657, at *6 ("The Court agrees with the line of cases finding that violating HIPAA can constitute an independent criminal act for purposes of the carve-out to ECPA's party exception."); *Murphy*, 2024 WL 4350328, at *5 (same); *Smith*, 2024 WL 3338941, at *7 (same); *Aspen Dental Mgmt., Inc.*, 2024 WL 4119153, at *3 ("Even if the crime-tort exception did require an act distinct from the alleged wiretapping, Plaintiffs plausibly allege that [Defendant] intended to violate the HIPAA when it transmitted Plaintiffs' information to third parties, which is distinct from the improper interception at issue in the ECPA claim.").

Here, Plaintiffs allege that Beaumont intercepted their communications for the purposes of violating HIPAA by collecting and disclosing their PHI and/or IIHI without their consent, thereby

tortiously and criminally invading their privacy. ¶¶ 240-53. Under HIPAA, information is IIHI if it (i) is "created or received by" a healthcare provider, (ii) "relates to the past, present, or future physical or mental health or condition of an individual, and (iii) either "identifies the individual" or provides a reasonable basis to identify the individual. ¶ 243 (citing 42 U.S.C. § 1320d(6)).

Plaintiffs' communications to Beaumont contained IIHI. Plaintiffs each allege that Beaumont received their respective communications with Beaumont's Web Properties. *See, e.g.*, ¶¶ 108, 124, 140. These communications pertained to Plaintiffs' respective past, present, or future physical or mental health or conditions. *See, e.g.*, ¶ 103 (Plaintiff Fateen's communications concerning her skin conditions); ¶ 119 (Plaintiff Johnston's communications concerning his sleep apnea and pulmonary issues); ¶ 135 (Plaintiff Sorvari's communications regarding treatment sought from an ophthalmologist, orthopedist, cardiologist, and physical therapist). Due to Beaumont's use of Tracking Tools, these communications identified each patient via an FID, unique Google identifiers, and computer IP address. ¶¶ 110, 126, 142.

Further, Plaintiffs allege that Beaumont's installation, configuration, and use of Tracking Tools to surreptitiously acquire patient communications without informed consent and disclose that information to Meta and Google was done to commit criminal and tortious acts in violation of Section 5(a) of the Federal Trade Commission Act ("FTC Act") and in violation of Section 445.903 of the MCPA. ¶ 240. These allegations are also sufficient to satisfy the crime-tort exception. *See, e.g.*, *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024) (denying motion to dismiss ECPA claim where invasion of privacy was alleged).

**B. Plaintiffs Allege that Beaumont Acted with Intent.**

Beaumont argues that Plaintiffs have not alleged that Beaumont acted with intent to harm. MTD at 7. This argument ignores Plaintiffs' well-pled allegations. For instance, Plaintiff alleges

that Beaumont purposely embedded and deployed Tracking Tools on its Web Properties to secretly track its patients' communications regarding healthcare information and disclose those communications to third parties, including Meta and Google. *See, e.g.*, ¶¶ 2, 33. This non-consensual collection and disclosure of PHI and PII to third parties caused harm to Plaintiffs. *See, e.g.*, ¶¶ 108-14, 124-30, 140-46.

Plaintiffs also allege that Beaumont acted intentionally and fully aware that its use of Tracking Tools risked harming its patients, including Plaintiffs. This included Beaumont's awareness that the disclosure of its patients' PHI and PII creates a substantial risk of harm. ¶¶ 32-33, 158-60 (explaining how the FTC and federal regulators have issued guidelines for businesses to implement reasonable data security practices and incorporate security into all areas of the business). For these reasons, Beaumont's intent to harm Plaintiffs is adequately pled. *See also In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) ("The existence of a lawful purpose does not sanitize an interception that was also made for an illegitimate purpose.").

**C. Factual Questions Should Not Be Resolved on the Pleadings.**

Whether Beaumont had criminal or tortious intent is a factual question for discovery to be decided on a full evidentiary record. *See, e.g.*, *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 720 (D. Minn. 2023) ("[D]etermination of [defendant]'s actual purpose for . . . using the Pixel Code requires a factual undertaking."); *W.W. v. Orlando Health, Inc.*, 2025 WL 722892, at *7 (M.D. Fla. Mar. 6, 2025) (same); *see also Menge v. City of Highland Park*, 2022 WL 54544, at *9 (E.D. Mich. Jan. 5, 2022) (holding that where "claims involve questions of intent and motive that must be developed through discovery"). Precisely because Plaintiffs "may be able to show" that the crime-tort exception applies at a later, fact-intensive stage, courts have held it is inappropriate to dismiss a suit at the pleading stage based on the single-party consent defense. *See Doe v. Smith*,

429 F.3d 706, 709 (7th Cir. 2005) (even where defendant "obviously consented to the recording, [] that does not justify dismissing the suit. Complaints need not anticipate or attempt to defuse potential defenses").

**D. The Contents of Plaintiffs' Communications Were Intercepted.**

To the extent Beaumont argues that Plaintiffs have not alleged that Beaumont intercepted or disclosed the "contents" of Plaintiffs' communications, that argument is unpersuasive. The ECPA defines "contents" as "any information concerning the substance, purport, or meaning of [a] communication." 18 U.S.C. § 2510(8)). For example, "narrative search queries revealed via URLs could represent 'contents'" under the ECPA. *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023).

Beaumont's installation and configuration of its Tracking Tools to capture the contents of Plaintiffs' communications, including their PHI, supports this element. Plaintiffs allege they used Beaumont's Web Properties to search for physicians, medical conditions, and medical treatments. *See, e.g.*, ¶¶ 102-03, 118-19, 134-35. The Tracking Tools that Beaumont deployed on its Web Properties captured the contents of these communications via descriptive long-URLs, microdata, and the inner text of buttons clicked by Plaintiffs on the Website. ¶¶ 111, 127, 143; *see also* ¶ 75 & Figures 1-2 (depicting patient's search for an oncology provider on Beaumont's website being captured and disclosed by the Meta Pixel to Meta along with the user's PII); ¶ 77 & Figure 3 (depicting a "SubscribedButtonClick" event disclosing that the specific user is attempting to make an appointment with an oncologist).

Plaintiffs also allege additional substantive and confidential PHI that they disclosed to Beaumont via communications with its Web Properties, including their specific search queries. ¶ 102 (Plaintiff Fateen ran searches on Beaumont's Web Properties for specialty providers,

including a dermatologist); ¶ 103 (Plaintiff Fateen ran searches on Beaumont's Web Properties related to her skin conditions and a dermatologist); ¶ 119 (Plaintiff Johnston ran searches on Beaumont's Web Properties related to his sleep apnea and pulmonary issues); ¶ 115 (Plaintiff Sorvari ran searches on Beaumont's Web Properties for an ophthalmologist, an orthopedist, a cardiologist, and a physical therapist). These search queries constitute "contents" of communications under the ECPA. *See, e.g.*, *Meta Platforms*, 90 F. Supp. 3d at 1076.

## II. PLAINTIFFS' COMMON LAW CLAIMS WITHSTAND A MOTION TO DISMISS.

### A. Plaintiffs Plead the *Prima Facie* Elements of Breach of Fiduciary Duty.

To state a claim for breach of fiduciary duty, Plaintiffs must allege (i) the existence of a fiduciary duty, (ii) a breach of that duty, and (iii) damages caused by the breach of duty. *Highfield Beach at Lake Michigan v. Sanderson*, 331 Mich. App. 636, 666 (2020) (citing *Delphi Auto PLC v. Absmeier*, 167 F. Supp. 3d 868, 884 (E.D. Mich., 2016). "A breach of fiduciary duty arises when a person holding a position of influence and confidence abuses the influence and betrays the confidence." *Id.*

#### 1. *Plaintiffs Allege Fiduciary Duty.*

Beaumont argues that Plaintiffs have not alleged a fiduciary duty. MTD at 8-9. This is not so. Plaintiffs allege that medical providers like Beaumont have a duty to their patients to keep non-public medical information completely confidential and to safeguard sensitive personal and medical information. ¶ 264.

Courts routinely recognize that the relationship between a physician and patient, which requires confidence, trust, and good faith, gives rise to a fiduciary duty. *See, e.g.*, *Melynchenko*, 152 Mich. App. at 197 (holding that fiduciary relationship exists between physician and patient); *In re Shields Health Care Grp., Inc. Data Breach Litig.*, 721 F. Supp. 3d at 165 (finding fiduciary

duty to protect plaintiffs' private information where "[defendant] required [plaintiffs] to provide private information and represented it would "[m]aintain the privacy of [plaintiffs'] health information as required by law"); *Weddle*, 2023 WL 8369786, at *8 (denying motion to dismiss breach of fiduciary duty claim where plaintiffs alleged that they shared confidential information with defendant in the context of a physician-patient relationship and to receive medical care); *see also Isidore Steiner, DPM, PC*, 299 Mich. App. at 267 (recognizing that "Michigan law grants the added protection of requiring patient consent before disclosure of patient information").

Beaumont next distorts Plaintiffs' allegations by arguing that the use of a public website cannot create a fiduciary duty. MTD at 8-9. But Plaintiffs do not allege that mere access to Beaumont's public website gives rise to a fiduciary relationship. Instead, Plaintiffs allege that a fiduciary relationship exists between themselves and Beaumont because they disclosed their PHI and PII to Beaumont via its Website and Portal. ¶¶ 265-66. By sharing this personal information with Beaumont, in response to prompts on Beaumont's Website and in its Patient Portal, Beaumont was placed in a position of trust and confidence with respect to this information and had a duty to keep it confidential and to refrain from disclosing that information to any third parties without Plaintiffs' knowledge, consent, or authorization. *See, e.g.*, *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d at 799 (holding that website operator had a duty to safeguard and not disclose personal information that plaintiffs entered on operator's website).

**2. *Plaintiffs Allege Damages.***

Plaintiffs have also alleged cognizable damages. Plaintiffs each allege that as the direct and proximate result of Beaumont's interceptions and disclosures of their respective communications to third-party data brokers they have suffered damages in the form of violation of confidentiality of PHI and PII, loss of benefit of the bargain, diminution of value of PHI and PII, and the continued

and ongoing risk to PHI and PII. *See, e.g.*, ¶¶ 114, 130, 146; *see also Rakyta v. Munson Healthcare*, 2021 WL 4808339, at *6 (Mich. Ct. App. Oct. 14, 2021) (stating that damages must be demonstrated with reasonable certainty).

Despite this, and without citing to a single authority, Beaumont summarily concludes that each of these damages are "simply not enough under Michigan law." MTD at 10. Contrary to Beaumont's conclusory assertion, case law from Michigan and this circuit supports Plaintiffs' position that each of Plaintiffs' alleged damages are cognizable. *See, e.g.*, *Cent. Cartage Co. v. Fewless*, 232 Mich. App. 517, 535 (1998) (affirming trial court's directed verdict in favor of plaintiffs regarding their breach of fiduciary duty claim because plaintiffs suffered damages when fiduciary deprived them of the benefit of the bargain); *Gen. Acquisition, Inc. v. GenCorp Inc.*, 766 F. Supp. 1460, 1475 (S.D. Ohio 1990) (denying motion to dismiss breach of fiduciary duty claim, stating that "[i]t is well settled that a fiduciary is under a duty not to disclose or use for his own benefit confidential information acquired in the course of its fiduciary relationship"); *Vidosh v. Holsapple*, 1987 WL 273164, at *19 (E.D. Mich. Feb. 2, 1987) (recognizing diminished value as damages in support of a breach of fiduciary duty claim); *see also Gay v. Garnet Health*, 2024 WL 4203263, at *5 (S.D.N.Y. Sept. 16, 2024) (finding that Plaintiffs suffered damages due to "ongoing harassment and embarrassment in the form of unwanted targeted advertisements").

Finally, the fact that Plaintiffs have already received targeted advertisements further supports their argument for cognizable damages. ¶¶ 105, 121, 137 (alleging Plaintiffs began receiving related advertisements on their Facebook accounts for medical treatments, doctors, and medical services after providing information to Beaumont regarding their PHI and PII). Therefore, Plaintiffs sufficiently allege damages and, as such, all necessary elements of their breach of fiduciary duty claim.

### B. Plaintiffs Plausibly Allege Breach of Implied Contract.

Plaintiffs have alleged a breach of implied contract claim, which, under Michigan law, requires Plaintiffs to plead the following elements: "(1) parties competent to contract; (2) a proper subject matter; (3) consideration; (4) mutuality of agreement; and (5) mutuality of obligation." *Hughes v. Nocerini*, 2024 WL 656006, at *6 (Mich. Ct. App. Feb.15, 2024), *appeal denied*, 8 N.W.3d 610 (Mich. 2024). Beaumont challenges Plaintiffs' allegations concerning mutual assent, consideration, and damages. MTD at 10-14.

#### 1. *Plaintiffs Allege Mutual Assent.*

First, Plaintiffs allege that they entered into an implied contract when Plaintiffs provided Beaumont with their PHI and PII (in conjunction with compensation for their medical care) in exchange for Beaumont's promise to safeguard and not disclose their PHI and PII without consent. ¶ 279. "[A]n implied-in-fact contract requires mutual assent just like any other contract, with the difference being that in the case of an implied-in-fact contract, the mutual assent is inferred from the parties' words and actions since the parties did not directly express their mutual assent and intent to contract." *Allen v. Michigan State Univ.*, 2024 WL 4982523, at *9 (Mich. Ct. App. Dec. 4, 2024) (citing *McInerney v. Detroit Trust Co.*, 279 Mich. 42, 46 (1937)).

Beaumont's assent to the terms of its implied-in-fact contract with Plaintiffs is evident from its Privacy Policy. ¶ 276. Beaumont represents in its Privacy Policy that "[a]ny and all information collected on [its] website will be kept strictly confidential and will not be sold, reused, rented, loaned, traded, leased or otherwise disclosed without prior consent." ¶ 276.[6] This language

---

[6] Rather than engage with the substance of Plaintiffs' allegations, Beaumont challenges the existence of its Privacy Policy on the basis that "the sources provided for the language upon which Plaintiffs rely are hyperlinks that do not direct to any specific policy." MTD at 11. Beaumont's Privacy Policy is located on its Website at the links provided in the FAC. In any event, the relevant

demonstrates both mutuality of agreement and mutuality of obligation. *Hughes*, 2024 WL 656006, at *6.

Plaintiffs' assent is demonstrated by providing their PHI and PII to Beaumont in light of Beaumont's representations. ¶¶ 275-77. Indeed, Plaintiffs allege that "[a]s a condition of utilizing [Beaumont's] Website and receiving services from [Beaumont's] healthcare facilities and professionals, Plaintiffs and the Class Members provided their Private Information and compensation for their medical care." ¶ 277. Plaintiffs further allege that when they provided their PHI and PII to Beaumont, they trusted that their confidential information would be kept secure and would not be disclosed to third-party data brokers without their express consent. ¶ 278. As such, Plaintiffs have pled mutual assent.

**2. *Plaintiffs Allege Consideration.***

Next, Plaintiffs allege that they provided consideration to Beaumont. "To have consideration there must be a bargained-for exchange." *Gen. Motors Corp. v. Dep't of Treasury, Revenue Div.*, 466 Mich. 231, 238 (2002) (citing *Higgins v. Monroe Evening News*, 404 Mich. 1, 20-21 (1978). "There must be a benefit on one side, or a detriment suffered, or service done on the other." *Id.* (citation and quotation marks omitted). "Courts do not generally inquire into the sufficiency of consideration." *Id.*

Here, Plaintiffs allege that "[a]s a condition of utilizing [Beaumont's] Website and receiving services from [Beaumont's] healthcare facilities and professionals, Plaintiffs and the Class Members provide their Private Information and compensation for their medical care." ¶ 277. Plaintiffs also allege that Beaumont provided consideration in that they allege that Beaumont

---

language from the Privacy Policy is quoted in Plaintiffs' FAC. ¶¶ 150, 152-53, 156, 276. At this stage of the litigation, these well-pled allegations are accepted as true. *Directv*, 487 F.3d at 476.

promised to keep their PHI and PII strictly confidential and would not disclose it. ¶ 276. It is well-settled under Michigan law that a promise to refrain from acting is valid consideration for purposes of contract formation. *See, e.g.*, *Jolls v. Burgess*, 252 Mich. 437, 441 (1930) (holding that refraining from exercising a legal right is valid consideration for contract formation).

#### 3. *Plaintiffs Allege Damages.*

Beaumont argues—again, without citing any authority—that the damages alleged by Plaintiff are not cognizable. MTD at 13-14. This position is incorrect as a matter of law.

Plaintiffs allege that as a direct and proximate result of Beaumont's breach of the implied contract, they sustained damages, including the loss of the benefit of the bargain and diminution in value of their PHI and PII. ¶ 283. Michigan courts recognize these as cognizable damages in support of a breach of contract claim. *See, e.g.*, *Stanton v. Dachille*, 186 Mich. App. 247, 252 (1990) (stating that "full compensation for the loss caused by depriving the plaintiff of the benefit of the bargain" is appropriate in breach of contract action); *McDill v. McDonald Co-op. Dairy Co.*, 91 Mich. App. 611, 620-21 (1979) (affirming jury verdict awarding damages equal to diminution of value as the result of breach of contract).

### C. Plaintiffs Allege Duty and Damages in Support of their Negligence Claim.

To state a claim for negligence, Plaintiffs must allege that (i) Defendant owed them a duty of care, (ii) Defendant breached its duty, (iii) Plaintiffs were injured, and (iv) Defendant's breach caused Plaintiffs' injuries. *Henry v. Dow Chem. Co.*, 473 Mich. 63, 72 (2005). Beaumont challenges only the first and third elements, *i.e.*, that it owed Plaintiffs a duty of care and that Plaintiffs were injured. MTD at 14-18.

1. ***Plaintiffs Allege Duty.***

Plaintiffs sufficiently allege that Beaumont owed them a duty of care. *See, e.g.*, ¶¶ 286-93. "The threshold issue of the duty of care in negligence actions must be decided by the trial court as a matter of law." *Riddle v. McLouth steel Prods. Corp.*, 440 Mich. 85, 95 (1992). A duty of care may be established "specifically by mandate of statute, or it may arise generally by operation of law under application of the basic rule of the common law, which imposes on every person engaged in the prosecution of any undertaking an obligation to use due care, or to so govern his actions as not to unreasonably endanger the person or property of others." *Id.* (cleaned up).

Plaintiffs first allege that Beaumont owed, and continues to owe, a duty to Plaintiffs to exercise reasonable care to secure, safeguard, and protect their highly sensitive PHI and PII from disclosure to third parties. *See, e.g.*, ¶ 287. In *Bell v. Michigan Council 25 of American Federation of State, County, and. Municipal Employees*, the Michigan Court of Appeals held that under certain circumstances, a special relationship can exist between a defendant and plaintiffs such that the defendant owes the plaintiffs a duty to protect them from identity theft by providing some safeguards to ensure the security of their most essential confidential identifying information, information that easily could be used to appropriate a person's identity. 2005 WL 356306, at *5 (holding that a duty to protect personal information arose where union was entrusted with members' personal information).

Here, Plaintiffs entrusted Beaumont with their personal information, including PII and PHI related to their medical symptoms, conditions, and potential treatments as well as personal information used to pay their bills and schedule appointments. *See, e.g.*, ¶ 65. As in *Bell*, the parties entered into a special relationship when Plaintiffs shared their PHI and PII with Beaumont via the use of Beaumont's Website and Patient Portal. Part and parcel of that special relationship under

Michigan law is Beaumont's duty to use reasonable care to secure, safeguard, and protect Plaintiffs' PHI and PII from disclosure to third parties. *Bell*, 2005 WL 356306, at *5.

Beaumont conflates the duty, which it owes to each individual who shares information with it via its Website and Portal, with the duty of care it owes to its patients as a medical provider. *See* MTD at 14. In any event, Beaumont does not—and cannot—refute that Michigan law has long recognized that a medical provider owes its patients a duty of care. *See, e.g.*, *Rogers*, 65 Mich. App. at 647.

Plaintiffs next allege that Beaumont had a duty to use reasonable security measures to protect Plaintiffs' PHI and other confidential information under HIPAA and the FTC Act. ¶¶ 289-92. Under Michigan law, to determine whether a statute creates a duty of care, "courts consider two questions: (1) did the Legislature intend that the statute would prevent the type of injury and harm actually suffered by the party; and (2) did the Legislature intend that the party was within the class of persons protected by the statute?" *Randall v. Michigan High Sch. Athletics Ass'n*, 334 Mich App. 697, 720 (2020) (citations omitted).

Beaumont contends that "the intent of the Legislature is clear" because neither HIPAA nor the FTC Act provide a private right of action. MTD at 15. But whether a statute provides a private right of action does not answer (1) whether the statute can prevent the type of injury and harm actually suffered by a party or (2) whether the statute protects a particular party. The question here is not whether Plaintiffs can bring a claim under HIPAA and the FTC Act—and they have not—but whether these statutes create a duty of care that Beaumont must uphold. HIPAA and the FTC Act require Beaumont to "reasonably protect" PHI and "take "reasonable measures to protect confidential data," respectively. 45 C.F.R. § 164.530(c)(1); 15 U.S.C. § 45. This is because the Legislature intended for these statutes to prevent the types of harms suffered by Plaintiffs that

result from Beaumont's unauthorized disclosure of PHI and other confidential information. As such, pursuant to these statutes, Beaumont had a duty to use reasonable security measures to protect Plaintiffs' PHI.

**2. *Plaintiffs Allege Damages.***

Beaumont once again challenges Plaintiffs' damages allegations, arguing Plaintiffs injuries are too speculative to be recognized under Michigan law. MTD at 16 (citing *Doe v. Henry Ford Health Sys.*, 308 Mich. App. 592, 600 (2004) (holding "the injury complained of in a negligence action must be an actual, present injury"); *Rayka v. Munson Healthcare*, 2021 WL 4808339, at *3 (Mich. Ct. App. Oct. 14, 2021)).

But Beaumont's reliance on *Henry Ford* and *Rakyta* is misplaced because, unlike here, the injuries alleged in those cases were *future* injuries, incurred to remedy the defendant's conduct. In *Henry Ford*, "the only actual losses [the plaintiff] identified were those incurred for the procurement of monitoring to guard against identity theft," 308 Mich. App. at 596, which the court found were not cognizable because they were "incurred in anticipation of possible future injury," *id.* at 601. Similarly, in *Rakyta*, the plaintiff "alleged that defendant's failure to adequately protect its patients' confidential information resulted in losses that were 'incurred to remedy or mitigate the effects of the attack.'" 2021 WL 4808339, at *3. Accordingly, the court in *Rakyta* dismissed the plaintiff's negligence claim because "only damages that arise from an actual, present injury, are cognizable under Michigan law." *Id.* (citing *Henry*, 473 Mich. at 75-76).

In this case, the injuries alleged by Plaintiffs are present injuries rather than the future injuries alleged in *Henry Ford* and *Rakyta*. Plaintiffs each allege that after they provided information to Beaumont regarding their PHI and PII, and after Beaumont violated the confidentiality of that information, they faced "ongoing harassment and embarrassment in the form

of unwanted targeted advertisements." ¶¶ 105, 121, 137, 299. Plaintiffs also allege that the value of their PHI and PII has already diminished as a result of Beaumont's unauthorized disclosure of their information. ¶¶ 114, 130, 146, 299. Courts have found that these forms of damages are cognizable. *See, e.g.*, *Mason v. Wright Bros. Constr. Co., Inc.*, 2025 WL 939709, at *7 (E.D. Tenn. Mar. 27, 2025) (recognizing diminished value of PII as a cognizable injury and denying motion to dismiss negligence claim); *Garnet Health*, 2024 WL 4203263, at *5 (finding that Plaintiffs suffered damages due to "ongoing harassment and embarrassment in the form of unwanted targeted advertisements"). As such, Plaintiffs have sufficiently alleged damages and all necessary elements of their negligence claim.

**D. Plaintiffs Allege Benefit and Inequity in Support of Unjust Enrichment.**

To state a claim for unjust enrichment, Plaintiffs must allege "(1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." *Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187, 195 (2006). Plaintiffs have alleged both elements of unjust enrichment.

Beaumont argues that Plaintiffs do not plausibly allege that they conferred any benefit on Beaumont. MTD at 16-17. But Plaintiffs allege that they conferred their PHI and PII to Beaumont and that Beaumont used this information for its own gain, realizing revenue from the use of Plaintiffs' PHI and PII for profit by way of targeted advertising related to their respective medical conditions and treatments sought. *See, e.g.*, ¶¶ 304, 306, 310; *see also* ¶¶ 161-77 (alleging the value of Plaintiffs' PHI and PII). Courts in this circuit have recognized the conveyance of personal information as a benefit sufficient to satisfy the first prong of an unjust enrichment claim. *See, e.g.*, *Perlin v. Time Inc.*, 237 F. Supp. 3d 623, 643 (E.D. Mich. 2017) (holding that plaintiff's

conveyance of personal information satisfied first prong of unjust enrichment claim). Beaumont's citations to contrary holdings from other circuits are unpersuasive. *See* MTD at 17.

Next, endeavoring to introduce a new element into the unjust enrichment analysis, Beaumont argues that Plaintiffs do not "allege that they provided the information in exchange for website data security services." MTD at 17. But Plaintiffs are not required to plead any such exchange. Rather, as Beaumont recites in its own brief, to satisfy the first element of an unjust enrichment claim, a plaintiff must only allege "the receipt of a benefit by the defendant from the plaintiff." MTD at 16 (citing *Morris Pumps*, 273 Mich. App. at 195). Plaintiffs have sufficiently done so. ¶¶ 304, 306, 310.

Beaumont also argues that Plaintiffs have not alleged "any injustice" attendant to Beaumont retaining Plaintiffs' PHI and PII. MTD at 18. But the conferral of Plaintiffs' PHI and PII to Beaumont, which Beaumont subsequently retained and used for its own gain without compensating Plaintiffs, is an inequity sufficient to satisfy the second element of an unjust enrichment claim. *People v. Walker*, 2011 WL 6786935, at *9 (Mich. Ct. App. Dec. 27, 2011) (recognizing personal information as an item of value). Beaumont's assertion that "there is no allegation that [Plaintiffs] failed to receive the services sought," MTD at 18, is a red herring, as any patient would pay for such medical services separate and apart from conveying their PHI and PII. ¶ 304. For these reasons, Plaintiffs have sufficiently pled an unjust enrichment claim.

## III. PLAINTIFFS ALLEGE VIABLE STATUTORY CLAIMS.

### A. The More Stringent Pleading Requirements of Federal Rule 9(b) Do Not Apply to the Michigan Consumer Protection Act.

Beaumont contends that Plaintiffs have failed to plead a violation of the MCPA with the specificity required by law because *all* MCPA claims must satisfy the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. MTD at 18-20. This is a misstatement of the

law. Michigan courts have held that MCPA claims not premised on fraud are not required to meet the more stringent Rule 9(b) pleading requirements. *See, e.g.*, *Michels v. Monaco Coach Corp.*, 298 F. Supp. 2d 642, 651 (rejecting argument that MCPA claim must be pleaded with particularity pursuant to Rule 9(b)); *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 666 (E.D. Mich. 2011) (holding that Rule 9(b) does not apply to all MCPA claims because not all MCPA claims are based on fraud); *State Farm Mut. Auto. Ins. Co. v. BMW of N. Am., LLC*, 2009 WL 2447612, at *7 (E.D. Mich. Aug. 7, 2009) (holding that defendant's "contention that Rule 9(b) requires the MCPA claim be pleaded with particularity is contrary to case law"); *see also In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d at 666 (E.D. Mich. 2011) (noting that Rule 9(b) applies to MCPA claims based on fraud).

Rather than recognize this dichotomy in the law, Beaumont claims that all MCPA claims must be analyzed within the framework of Rule 9(b)'s heightened pleading requirements. But the cases that Beaumont cites in support of its position are all cases in which the plaintiffs alleged MCPA claims that sound in fraud. *See* MTD at 18 (citing *In re OnStar Cont. Litig.*, 278 F.R.D. 352 (E.D. Mich. 2011)[7] (analyzing plaintiffs' fraud-based MCPA claim "with reference to the common-law tort of fraud"); *Kussy v. Home Depot U.S.A., Inc.*, 2006 WL 3447146 (E.D. Mich. 2006) (same); *Mayhall v. A.H. Pond Co., Inc.*, 129 Mich. App. 178 (1983) (same)). In those cases, the courts, correctly and consistent with the dichotomy that exists for fraud and non-fraud claims under the MCPA, analyzed the alleged fraud claims within the framework of Rule 9(b). *Id.*

---

[7] The *In re OnStar Contract Litigation* decision that Beaumont primarily relies on is a decision on a motion for class certification and not a decision on the merits. *See generally* 278 F.R.D. 352. Indeed, the quote that Beaumont cites arises in the context of the court's discussion of the predominance requirement under Rule 23 of the Federal Rules of Civil Procedure. *Id.* at 376.

Here, Plaintiffs have met the pleading standard required to state a claim under the MCPA. The MCPA prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." MICH. COMP. LAWS ANN. § 445.903(1). The MCPA articulates thirty-seven definitions of an unfair, unconscionable, or deceptive method, act, or practice. *Id.* §§ 445.903(1)(a)-(kk). Plaintiffs allege Beaumont's unfair, unconscionable, and deceptive practices that fall within these definitions. *See* ¶¶ 316-17; *see also, e.g.*, ¶¶ 75-99, 148-56. Since Plaintiffs' claim under the MCPA does not sound in fraud, the heightened pleading requirements of Rule 9(b) do not apply.

**B. Plaintiffs Plead a Violation of the Michigan Nonprofit Health Care Corporations Reform Act.**

The Nonprofit Health Care Corporations Reform Act mandates that Michigan health care corporations—like Beaumont—use reasonable care to secure the personal data of their members. Specifically, the Nonprofit Health Care Corporations Reform Act provides, in relevant part:

> A health care corporation shall, in order to ensure the confidentiality of records containing personal data that may be associated with identifiable members, use reasonable care to secure these records from unauthorized access and to collect only personal data that are necessary for the proper review and payment of claims and for health care operations, treatment, and research.

MCL § 550.1406(1).

Plaintiffs allege—and Beaumont does not dispute—that Beaumont is a "healthcare corporation" and Plaintiffs are "members," as those terms are defined in the Nonprofit Health Care Corporations Reform Act. ¶¶ 328-30; *see also* MTD at 20-21. Instead, Beaumont posits that Plaintiffs have not alleged that Beaumont failed to safeguard their "personal data." MTD at 21. Beaumont's argument is belied by the plain meaning of the statute and the allegations in the complaint.

The term "personal data" is defined in the Nonprofit Health Care Corporations Reform Act as "a *document* incorporating medical or surgical history, care, treatment, or service; or any similar record, including an automated or computer accessible record, relative to a member, which is maintained or stored by a health care corporation." MCL § 550.1107(4) (emphasis added). The term "document" is not defined in the Nonprofit Health Care Corporations Reform Act. "An undefined statutory term must be accorded its plan and ordinary meaning." *Brackett v. Focus Hope, Inc.*, 482 Mich. 269, 276 (2008). "A lay dictionary may be consulted to define a common word or phrase that lacks a unique legal meaning." *Id.* Black's Law Dictionary defines the word "document" as "something tangible on which words, symbols, or marks are recorded. Most traditionally of course, the term embraced any piece of paper with information on it. Today the term also embraces any information stored on a computer, electronic storage device, or any other medium." DOCUMENT, Black's Law Dictionary (12th ed. 2024).

Here, Plaintiffs allege that Beaumont possessed their "personal data," as that term is defined in the Nonprofit Health Care Corporations Reform Act. Plaintiffs allege that they conveyed information regarding their medical care, treatment, and services to Beaumont. ¶¶ 102-03, 118-19, 134-35; *see also* ¶ 65 ("The PHI intercepted, *recorded*, and transmitted to Meta includes, but is not limited to, exact search terms and search results, patient status, health symptoms, health conditions, treatments, appointment details, and physicians and locations sought.") (emphasis added); MCL § 550.1107(4). For example, Plaintiff Fateen conveyed information regarding her skin conditions and dermatologists who could treat those medical conditions. ¶ 103. Plaintiff Johnston conveyed information about his medical conditions, including sleep apnea and pulmonary issues. ¶ 119. Plaintiff Sorvari conveyed information regarding medical treatment from an ophthalmologist, an orthopedist, a cardiologist, and a physical therapist.

¶ 135. In turn, Beaumont intercepted these communications, ¶¶ 108, 124, 140, and transmitted them to Facebook and Google, ¶¶ 110, 126, 142.

Plaintiffs further allege that Beaumont violated the Nonprofit Health Care Corporations Reform Act by failing to adequately safeguard Plaintiffs' PII and PHI from unauthorized access by third party actors. ¶ 331. Beaumont does not dispute this allegation. Accordingly, Plaintiffs have alleged a violation of the Nonprofit Health Care Corporations Reform Act.

**CONCLUSION**

Plaintiffs request that this Honorable Court deny Beaumont's motion to dismiss, grant leave to amend to address any pleading deficiencies, and award other relief equity and justice require.[8]

Dated: May 23, 2025

Respectfully submitted,

*/s/David S. Almeida*

David S. Almeida
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
T: (708) 320-1026
david@almeidalawgroup.com

*Attorney for Plaintiffs & the Putative Class*

---

[8] Leave to amend should be freely granted. *See, e.g.*, *Rudd v. Pittman*, 2021 WL 230112, at *2 (W.D. Mich. Jan. 22, 2021), *aff'd*, 2022 WL 10248064 (6th Cir. Apr. 25, 2022) (citing Fed. R. Civ. P. 15(a)). While Plaintiffs contend that sufficient facts are pled to support their causes of action and damages, should the Court be persuaded to dismiss any claim, Plaintiffs respectfully request leave to file a Second Amended Complaint.

**CERTIFICATE OF COMPLIANCE WITH LOCAL CIVIL RULE 7.2(b)**

Pursuant to Local Civil Rule 7.2(b)(i) & (ii), Plaintiffs' Opposition to Defendant's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint does not exceed 10,800 words, including headings, footnotes, citations, and quotations. The word count of Plaintiffs' Opposition to Defendant's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint is 7,788 words. Microsoft Word 16 was used to generate the word count for this Certificate of Compliance.

*/s/David S. Almeida*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 23 day of May, 2025, I filed and served the forgoing Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint, Certificate of Compliance with W.D. Mich. LCivR 7.2(b)(ii), and Certificate of Service through the Court's CM/ECF system, which will send notification of such filing to all attorneys of record.

*/s/David S. Almeida*